## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO
### Judge William J. Martínez

Criminal Case No. 18-cr-429-WJM

UNITED STATES OF AMERICA,

      Plaintiff,

v.

**1.    MYKHAEL KUCIAPINSKI,**
**2.    KEVIN KUCIAPINSKI,**
3.    RANDOLPH STIMAC,

      Defendants.

---

### ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS FOR DETERMINATION OF LAW APPLICABLE TO JURY INSTRUCTIONS

---

The Government variously charges Mykhael Kuciapinski ("Ms. Kuciapinski"), Kevin Kuciapinski ("Mr. Kuciapinski"), and Randolph Stimac ("Mr. Stimac") with conspiracy to commit procurement fraud and to defraud the United States (18 U.S.C. § 371), participation by an executive branch employee in a matter affecting the employee's financial interest (18 U.S.C. § 208), unlawful disclosure of procurement information (41 U.S.C. § 2102(a)), unlawful receipt of procurement information (41 U.S.C. § 2102(b)), concealment of a material fact from a government official (18 U.S.C. § 1001), wire fraud (18 U.S.C. § 1342), and major fraud against the United States (18 U.S.C. § 1031).

The alleged procurement-related crimes are rarely prosecuted—meaning that relevant case law is sparse and pattern jury instructions do not exist. The Court therefore granted Ms. Kuciapinski's and Mr. Kuciapinski's motion for early briefing of

certain matters regarding jury instructions.  (ECF No. 159.)  Now before the Court are

Ms. Kuciapinski's Motion for Determination of Law Applicable to Jury Instructions (ECF

No. 196) and Mr. Kuciapinski's Motion for Determination of Law Applicable to Jury

Instructions (ECF No. 197).  Mr. Stimac did not seek leave to file, and has not filed, any

similar motion.  Accordingly, for purposes of this order, "Defendants" refers to Ms.

Kuciapinski and Mr. Kuciapinski, but not Mr. Stimac.

When the Court granted Defendants leave to address matters relating to the

procurement charges early, the Court was not intending that the outcome would be a

complete and finalized set of instructions on those charges, as if the Court had gone

through a complete charging conference.  Defendants and the Government have

nonetheless submitted full instructions for approval.

**The Court will not determine at this stage the complete content of any jury**

**instruction.  The Court will only resolve the specific legal issues raised in the**

**briefing, and the Court expects the parties' proposed jury instructions (submitted**

**in the normal course per WJM Revised Practice Standard VI.A) to conform to the**

**Court's rulings. Moreover, the parties need not and shall not re-propose a jury**

**instruction that would be rejected in light of these rulings.**  The parties' motions

and briefing are enough to preserve their arguments for appeal, if any.

The Court will begin by addressing the statutes that underlie the procurement

fraud charges.  Following that, the Court will address Ms. Kuciapinski's arguments, and

then Mr. Kuciapinski's arguments.

A.     **Statutory Text**

The charges relating to procurement fraud are grounded in the Procurement

Integrity Act, 41 U.S.C. §§ 2101–07.  Two portions of that statute combine to form a

potential felony offense.  The first portion establishes a prohibition on disclosing or

obtaining certain kinds of procurement-related information:

> **(a) Prohibition on disclosing procurement information.—**
>
> > **(1) In general.—**Except as provided by law, a person described in paragraph (3) shall not knowingly disclose contractor bid or proposal information or source selection information before the award of a Federal agency procurement contract to which the information relates.
> >
> > **(2) Employee of private sector organization.—**In addition to the restriction in paragraph (1), an employee of a private sector organization assigned to an agency under chapter 37 of title 5 shall not knowingly disclose contractor bid or proposal information or source selection information during the 3-year period after the employee's assignment ends, except as provided by law.
> >
> > **(3) Application.—**Paragraph (1) applies to a person that—
> >
> > > (A)(i) is a present or former official of the Federal Government; or
> > >
> > > (ii) is acting or has acted for or on behalf of, or who is advising or has advised the Federal Government with respect to, a Federal agency procurement; and
> > >
> > > (B) by virtue of that office, employment, or relationship has or had access to contractor bid or proposal information or source selection information.
>
> **(b) Prohibition on obtaining procurement information.—**Except as provided by law, a person shall not knowingly obtain contractor bid or proposal information or source selection information before the award of a Federal agency procurement contract to which the information relates.

41 U.S.C. § 2102.  For purposes of this order, the Court will use the phrase

"procurement information" as shorthand for the oft-repeated but unwieldy phrase,

"contractor bid or proposal information or source selection information before the award

of a Federal agency procurement contract to which the information relates."

Section 2102, by itself, is a prohibition without a penalty.  The penalty comes

three statutory sections later:

> A person that violates section 2102 of this title to exchange information covered by section 2102 of this title for anything of value or to obtain or give a person a competitive advantage in the award of a Federal agency procurement contract shall be fined under title 18, imprisoned for not more than 5 years, or both.

41 U.S.C. § 2105(a).

The parties argue over how various portions of §§ 2102 and 2105 should be interpreted. At the outset, however, the Court finds it important to state its understanding of what § 2105 adds to § 2102, namely, a very specific intent requirement. A person violating § 2102 does not commit a crime unless the person commits the violation with the intent to, *e.g.*, "exchange [that information] for anything of value," § 2105(a).

On the other hand, § 2105 does not require that the person *carry out* the intent, and to impute such a requirement would create absurdities. For example, a person could steal procurement information with the intent to sell it, but could nonetheless escape conviction by proving that he failed to sell it. Or, looking at the same hypothetical from the Government's perspective, Government agents who discover that a person has stolen procurement information would need to wait to see if the person successfully sells it before they could seek an indictment. Nothing in the Procurement Integrity Act suggests that Congress meant to endorse such purpose-defeating outcomes.

With this understanding, the Court turns to Defendants' arguments.

## B. Ms. Kuciapinski's Contentions

The Superseding Indictment charges Ms. Kuciapinski with, among other things,

unlawfully obtaining procurement information, in violation of §§ 2102(b) and 2105(a). Ms. Kuciapinski makes several claims about the proper interpretation of these statutes. The Court will address them in turn.

1. "Knowingly"

When interpreting federal criminal statutes, there is "a longstanding presumption, traceable to the common law, that Congress intends to require a defendant to possess a culpable mental state regarding each of the statutory elements that criminalize otherwise innocent conduct." *Rehaif v. United States*, 139 S. Ct. 2191, 2195 (2019) (internal quotation marks omitted); *see also Flores-Figueroa v. United States*, 556 U.S. 646, 652 (2009) ("courts ordinarily read a phrase in a criminal statute that introduces the elements of a crime with the word 'knowingly' as applying that word to each element"). In light of this presumption, Ms. Kuciapinski argues that "to prove a violation of section 2102(b), the government must prove not only that an individual knowingly obtained procurement documents, but that the individual also knew what those documents were, and knew that a procurement contract had not yet been awarded." (ECF No. 196 at 5.) In other words, the jury instruction would require the jury to find that the Government had proved that Ms. Kuciapinski (i) knowingly obtained procurement information, (ii) knowing that it *was* procurement information, and (iii) knowing that she had obtained it "before the award of a Federal agency procurement contract to which the information relates." 41 U.S.C. § 2102(b).

The Government's only response is that § 2102(b) does not require that the person know that the procurement contract has yet to be awarded, but only that the person come into possession of the information before the award. (ECF No. 203 at 9.) This response fails to address Ms. Kuciapinski's argument. Obtaining the information

before the award of the contract is plainly an element of the § 2102(b) offense, and the Government offers no reason why the above-quoted "longstanding presumption" should not apply to that element.

Moreover, § 2105(a) provides indirect support for the notion that the Court should *not* depart from the presumption. Section 2105(a) requires the person to obtain the information with an intent to profit from it or gain a competitive advantage. It is difficult to understand how a person could form such an intent if, *e.g.*, she did not recognize the information as procurement information, or she thought that the contract had already been awarded.

For all these reasons, the Court agrees with Ms. Kuciapinski's interpretation of the scope of "knowingly" in § 2102(b).

2.    "Person"

Ms. Kuciapinski asserts that only a government employee may violate § 2102(b). (ECF No. 196 at 2–4.) This is not a natural reading of § 2102(b), especially when read together with § 2102(a). (*See statutory text at* Part A, *above*.) Subsection (a) prohibits a specifically defined group of persons—current and former federal government employees and relevant non-employee agents—from disclosing procurement information; and subsection (b) prohibits an *undefined* group of persons from knowingly obtaining procurement information. If subsection (b), by itself, was not clear, the contrast with subsection (a) seems to make clear that only a certain class of federal employees and agents can violate (a), but anyone can violate (b). Combined with § 2105(a)'s intent requirements, this makes good sense and is consistent with federal prohibitions on similar activity, such as securities laws that restrict both providers' and receivers' use of nonpublic information. *See, e.g.*, *Salman v. United States*, 137 S. Ct.

420, 423 (2016).

Ms. Kuciapinski argues, however, that "person" in § 2102(b) is no broader than "person" in § 2102(a). Her argument relies entirely on a decision from the Court of Federal Claims, which she describes as "the court which has issued nearly all of the case law dealing with the Procurement Integrity Act." (ECF No. 196 at 3.) The decision is *GEO Group, Inc. v. United States*, 100 Fed. Cl. 223 (2011).

In *GEO Group*, the court was construing 41 U.S.C. § 423(a)–(b) (2006), which is the previous codification of § 2102, and is, for present purposes, materially identical to § 2102. The court ruled that § 423(b) "appears to apply only to current or former officials of the United States or persons who are acting or have acted on such an individual's behalf." *Id.* at 227. The court acknowledged that its construction "is not apparent from the statutory language, which merely refers generically to a 'person.'" *Id.* The court nonetheless gave three reasons in support of its construction.

First, it said that its "conclusion is supported by the overall structure of the statute, including the definitions therein of 'bid and proposal information' and 'source selection information,' both of which talk in terms of specific information obtained by a Federal agency. *See* 41 U.S.C. § 423(f)(1)–(2)." *Id.* The cross-referenced citation is the predecessor (and materially identical) to 41 U.S.C. § 2101(2) & (7), and it indeed refers to specific information obtained—or created—by a federal agency (*e.g.*, bid prices, internal rankings of bid proposals, costs and labor rates, proprietary information about manufacturing processes). But this Court does not see how the type or source of the information has any relevance to whether a person *receiving* the information must be a federal employee or agent.

7

Second, the court in *GEO Group* said that its construction "derives support from the legislative history of the statute, which refers to the provision in question as applying to 'present or former federal employees,' H. Conf. Rep. No. 104-450, at 969 (1996), 1996 U.S.C.C.A.N. 238, 454[.]" 100 Fed. Cl. at 227. The full relevant quotation from the cited legislative history is as follows: "The provision [*i.e.*, the former 41 U.S.C. § 423] would prohibit, except as provided by law, present or former federal employees from knowingly obtaining or disclosing such information before the award of a contract to which information relates." But this summary statement does not say that federal employees *alone* are prohibited from receiving procurement information. In any event, it is not an "extraordinary showing of contrary intentions." *See United States v. Albertini*, 472 U.S. 675, 680 (1985) ("Courts in applying criminal laws generally must follow the plain and unambiguous meaning of the statutory language. Only the most extraordinary showing of contrary intentions in the legislative history will justify a departure from that language." (internal quotation marks and citations omitted; alterations incorporated)).

Finally, the court in *GEO Group* said that its construction "derives support . . . from the Federal Acquisition Regulations (FAR) that implement this provision, see 48 C.F.R. § 3.104-4." *Id.* The cited regulation remains in effect today, with immaterial alterations as compared to the version in effect at the time of *GEO Group*. *Compare* 48 C.F.R. § 3.104-4 (2011 ed.) *with id.* (2019 ed.). The regulation focuses entirely on disclosure of procurement information (not obtaining it). In other words, this regulation has no obvious relevance to the question of whether § 2102(b) applies to government employees and agents.[1]

---

[1] The immediately preceding regulation largely parrots 41 U.S.C. § 2102(a)–(b), including by defining "person" for purposes of disclosure as current or former government

For all these reasons, the Court disagrees with *GEO Group* (to the extent its interpretation of § 423(b) carries forward to § 2102(b)). The plain text of § 2102(b), by itself and in context with § 2102(a), applies to any person who receives procurement information, not just government employees or agents.

3. "Exchange"

As noted, § 2105(a) establishes the criminal penalties for § 2102 violations, as follows:

> A person that violates section 2102 of this title to exchange information covered by section 2102 of this title for anything of value or to obtain or give a person a competitive advantage in the award of a Federal agency procurement contract shall be fined under title 18, imprisoned for not more than 5 years, or both.

The predecessor to § 2105(a) is 41 U.S.C. § 423(e)(1) (2006), which read as follows:

> Whoever engages in conduct constituting a violation of subsection (a) or (b) of this section for the purpose of either—
>
>    (A) exchanging the information covered by such subsection for anything of value, or
>
>    (B) obtaining or giving anyone a competitive advantage in the award of a Federal agency procurement contract,
>
> shall be imprisoned for not more than 5 years or fined as provided under Title 18, or both.

Ms. Kuciapinski argues that Congress's amendment and re-codification of § 423(e)(1) in § 2105(a), and particularly Congress's elimination of the "(A)" and "(B)" divisions and explicit either/or structure, means that exchanging information, although

officials and relevant agents, and leaving "person" for purposes of receipt undefined. *See* 48 C.F.R. § 3.104-3(a)–(b). But this regulatory restatement of 41 U.S.C. § 2102(a)–(b) equally seems to suggest that "person" in subsection (b) means *any* person.

previously an element of only version "(A)" of the § 423(e)(1) offense, is now a

requirement for both versions of the § 2105(a) offense.  (ECF No. 196 at 6.)  In other

words, Ms. Kuciapinski reads § 2105(a) as if it was formatted as follows:

> A person that violates section 2102 of this title to exchange
> information covered by section 2102 of this title
>
> > for anything of value or
> >
> > to obtain or give a person a competitive advantage in the
> > award of a Federal agency procurement contract
>
> shall be fined under title 18, imprisoned for not more than 5
> years, or both.

This contrasts with the obvious alternative, which would be formatted as follows:

> A person that violates section 2102 of this title
>
> > to exchange information covered by section 2102 of this
> > title for anything of value or
> >
> > to obtain or give a person a competitive advantage in the
> > award of a Federal agency procurement contract
>
> shall be fined under title 18, imprisoned for not more than 5
> years, or both.

Ms. Kuciapinski further argues that ambiguity in a criminal statute requires

doubts to be resolved in favor of the defendant.  (ECF No. 196 at 7.)

> A statute is ambiguous when it is capable of being
> understood by reasonably well-informed persons in two or
> more different senses.  If an ambiguity is found, a court may
> seek guidance from Congress's intent, a task aided by
> reviewing the legislative history.  A court can also resolve
> ambiguities by looking at the purpose behind the statute.

*United States v. Quarrell*, 310 F.3d 664, 669 (10th Cir. 2002) (internal quotation marks

and citations omitted).  Only if the statute remains ambiguous after consulting available

external sources does the rule of lenity apply, resolving doubts in the defendant's favor.

*Id.* at 674.

Ms. Kuciapinski cites no legislative history discussing Congress's intent when it amended and re-codified § 423(e)(1) as § 2105(a). But it is far from obvious that Congress meant to apply the "exchange" requirement to both versions of the violation, thereby de-criminalizing the act of violating § 2102 with *only* the intent to obtain or give a competitive advantage (and not the intent to *exchange* procurement information in order to obtain or give a competitive advantage). If Congress intended to create such an unusual and technical loophole, surely there would be a record of such intent, or something else in the statute that shows such a loophole is justified and sensible, but Ms. Kuciapinski presents nothing in that regard. *Cf. Salinas v. United States*, 522 U.S. 52, 66 (1997) ("The rule [of lenity] does not apply when a statute is unambiguous or when invoked to engraft an illogical requirement to its text.").

In any event, § 2105(a) is not the sort of statute that "reasonably well-informed persons" could interpret "in two or more different senses." *Quarrell*, 310 F.3d at 669. One who reads through § 2105(a) without knowing about former § 423(e)(1) would much more readily and naturally divide the statute at the two infinitive verb forms ("to exchange" and "to obtain or give"). And one who knows that § 423(e)(1) made this division explicit would have no reason to think that Congress meant to eliminate it, even if it is unclear why Congress abandoned the explicit (A)/(B) structure. *See Salinas*, 522 U.S. at 60 ("A statute can be unambiguous without addressing every interpretive theory offered by a party. It need only be plain to anyone reading the Act that the statute encompasses the conduct at issue." (internal quotation marks omitted)).

For these reasons, the Court rejects Ms. Kuciapinski's contention that "exchange" is a part of both versions of the crime specified in § 2105(a).

4. <u>Affirmative Act</u>

Ms. Kuciapinski argues that a § 2102(b) violation requires "an affirmative act" on the defendant's part, as opposed to—apparently—passive or accidental receipt of information.  (ECF No. 196 at 8.)  She draws this principle from *Jacobs Technology Inc. v. United States*, 100 Fed. Cl. 198, 214 (2011), which states that "a [Procurement Integrity Act] violation essentially requires an affirmative act by the offeror to obtain source selection information; simply having knowledge is not enough to support a possible PIA violation."[2]

Under the circumstances, there is no need to instruct the jury specifically that it must find that the defendant took an affirmative act.  The criminal prohibition in § 2105(a) already supplies the elements of what might otherwise be called an affirmative act: the person must "violate section 2102"—meaning, in Ms. Kuciapinski's case, that she knowingly obtained procurement information—with the intent to exchange the information for thing of value or to obtain or confer a competitive advantage.  In other words, the obtaining, by whatever means, combined with the intent supplied by § 2105(a), establishes the crime.

The only circumstance in which a jury might need an explicit "affirmative act" instruction (assuming without deciding that the *Jacobs* decision is correct) is if the Government were planning to prove that (i) Ms. Kuciapinski passively obtained or absorbed procurement information yet somehow did so with the required intent, or (ii) Ms. Kuciapinski obtained the procurement information through no effort of her own (*e.g.*, accidentally) and *later* formed the intent to profit from it or to obtain or give a

---

[2] This decision, like *GEO Group*, was construing the former 41 U.S.C. § 423(b).

competitive advantage. The Court does not understand the Government to be advancing either theory. Nor is the Court aware of any intent on Ms. Kuciapinski's part to convince the jury that whatever procurement information she received, she received it unsolicited (*i.e.*, without any "affirmative act" on her part). At this stage, then, there is no reason to consider an explicit "affirmative act" instruction.

5. <u>Wrongful Intent</u>

Lastly, Ms. Kuciapinski argues that the jury must receive an instruction about "wrongful intent" based on legislative history of the former 41 U.S.C. § 423: "The criminal penalties apply only to 'knowing and willful' violations. The willfulness requirements means that wrongful intent must be shown to prove a criminal violation. Where this intent cannot be shown, a civil action may be appropriate, but a criminal action is not." (ECF No. 196 at 8 (quoting Congressional Record—Senate, Oct. 20, 1988, Comments on The Procurement Integrity Component of S. 2215, p. 32158) (emphasis removed).)

The only explicit *mens rea* in the current version of the statute (§ 2102) is "knowingly." Moreover, as already addressed multiple times, § 2105(a) specifies the necessary additional intent that transforms a § 2102 violation into a crime. There is no freestanding "wrongful intent" element on which the jury must be instructed.

6. <u>Aiding & Abetting</u>

The Government's response brief asserts that Ms. Kuciapinski has been charged with aiding and abetting a § 2102(b) violation, and proposes a jury instruction in this regard. (*See* ECF No. 203 at 4–5.) Ms. Kuciapinski, in her reply brief, correctly points out that that the Superseding Indictment only charges her with directly committing the § 2102(b) crime, not with aiding and abetting such a crime. (ECF No. 215 at 3–4; *see*

*also* ECF No. 204 at 18–20.)  Accordingly, absent a further superseding indictment to charge the aiding and abetting offense, the Court will not give an alternative aiding and abetting instruction as to the § 2102(b) charges against Ms. Kuciapinski.

## C.     Mr. Kuciapinski's Contentions

The Superseding Indictment charges Mr. Kuciapinski with, among other things, unlawfully disclosing procurement information, in violation of §§ 2102(b) & 2105(a), and conspiracy to violate § 2102, as prohibited by the general conspiracy statute, 18 U.S.C. § 371.  Mr. Kuciapinski makes several claims about the proper interpretation of these statutes.  The Court will address them in turn.

### 1.     "SEI Contract"

The Superseding Indictment charges Defendants with conspiracy to violate § 2102, specifically

> to provide a competitive advantage to defendant Mykhael Kuciapinski and her company by disclosing to defendant Mykhael Kuciapinski bid or proposal information and source selection information for the Signal Emitter Identification (SEI) contract.  The Health and Human Services (HHS) SEI contract is numbered HHSN316201200115W-HHSP233201400203W, and is also titled as VESPERLILLET, hereinafter SEI contract.  As to conduct that occurred prior to the award of the SEI contract, that conduct is referred to as being related to the SEI project.

(ECF No. 204 ¶ 2.)

Mr. Kuciapinski insists that the jury instructions should not include "SEI contract" or "SEI project," even as a shorthand, due to potential confusion:

> [T]hat non-specific language will cause the jury confusion because there is no such thing as "the SEI project" or "the SEI contract."  Rather than being <u>a</u> project or <u>a</u> contract, SEI (Specific Emitter Identification) is a broad area of technology and associated methodologies and processes employed by U.S. signal intelligence assets to identify specific devices

> emitting certain electronic signals. Because the evidence
> will show that Mr. Kuciapinski was actively involved in other
> SEI-related work at the time charged in the indictment, using
> the vague terms "the SEI project" or the "SEI contract" will
> create confusion and could result in a prejudicial variance.

(ECF No. 197 at 4 (emphasis in original).)  Mr. Kuciapinski therefore requests that the

jury be instructed "that the only contract at issue in Count One [conspiracy] is the Health

and Human Services (HHS) Specific Emitter Identification (SEI) contract number

HSN316201200115W-HHSP233201400203W, also titled as VESPERLILLET." (*Id.*

at 5.)

In response, the Government asks that the Court "allow the presentation of the

case and evidence before deciding.  The government anticipates that several witnesses

and exhibits will show that all of these terms were used at specific time periods during

the conspiracy, and even after the award of the contract, abbreviated names were used

by involved parties."  (ECF No. 203 at 11.)

The Court agrees with the Government that it needs to hear the evidence

presented at trial before it can rule on Mr. Kuciapinski's request.  This is so for the

reasons stated by the Government, and because Mr. Kuciapinski's other filings make

clear that he plans to prove he was never "involved in any way with the Health and

Human Services ('HHS') support Task Order number HHSN316201200115W-

HHSP233201400203W on an existing HHS contract, also titled as 'VESPERLILLET,'"

and all of the evidence against him is "actually related to the other projects on which

[he] was doing legitimate SEI engineering and development work."  (ECF No. 221 at 2,

3.)  In other words, it appears that Mr. Kuciapinski is attempting to tailor the jury

instruction to his specific defense.  The Court does not rule that such an instruction

could never be justified, but the Court will not approve it without first hearing the

evidence and the parties' arguments regarding why a specifically tailored instruction is or is not appropriate.

2. <u>Conspirators' Intent</u>

Mr. Kuciapinski argues that, with regard to conspiracy, "the government must prove that the co-conspirators intended to commit the underlying elements of the substantive offense," and the jury should be so instructed. (ECF No. 197 at 5.) He therefore proposes that the jury instruction regarding conspiracy require the jury to find that "[t]he defendant agreed with his co-defendants to violate 41 U.S.C. § 2102 as defined in [a cross-referenced instruction setting forth the substantive § 2102 offense]." (ECF No. 197-1 at 2.)

The Government responds that the Court should not deviate from the Tenth Circuit Criminal Pattern Jury Instruction § 2.19, which—as to this issue—requires the Government to prove only that "the defendant agreed with at least one other person to violate the law." (*See* ECF No. 203 at 12.) The Government further proposes that the Court instruct the jury (somewhere else in the jury instructions, apparently) that "[y]ou must find that there was a plan to commit at least one of the crimes alleged in the indictment, specifically procurement fraud or/and fraud against the United States, with all of you agreeing as to the particular crime which the conspirators agreed to commit." (*Id.* at 3.)

The only substantive difference the Court can glean from the parties' competing proposals appears to be that Mr. Kuciapinski wants to require the Government to prove a conspiratorial meeting of the minds as to each element of the § 2102 offense. That is an overstatement what the law of conspiracy requires. "A conspirator must intend to further an endeavor which, if completed, would satisfy all of the elements of a

16

substantive criminal offense . . . ." *Salinas*, 522 U.S. at 65. Unless the underlying substantive offense requires awareness of the elements of the crime, there is no requirement that the conspirators understand the offense's discrete elements and agree to take actions that would satisfy each of them. *See United States v. Feola*, 420 U.S. 671, 686 (1975) ("to sustain a judgment of conviction on a charge of conspiracy to violate a federal statute, the Government must prove at least the degree of criminal intent necessary for the substantive offense itself"); *id.* at 687 ("The general conspiracy statute, 18 U.S.C. s 371, offers no textual support for the proposition that to be guilty of conspiracy a defendant in effect must have known that his conduct violated federal law." (footnote omitted)). If that is the sort of instruction Mr. Kuciapinski seeks, the Court rejects his request.

As for the remaining differences between the parties' proposals, the Court views them as formal and semantic, not substantive. In the normal course of preparing for trial, the parties' discussions regarding stipulated instructions, *see* WJM Revised Practice Standard VI.B.1, shall address whether they can stipulate to the Tenth Circuit's generic language (an agreement "to violate the law") or, alternatively, language that calls out the specific offenses underlying the Government's conspiracy theory.

3.    "Knowingly"

Similar to Ms. Kuciapinski's arguments above regarding "knowingly" in § 2102(b), Mr. Kuciapinski relies on the presumption that "knowingly" in § 2102(a) applies to all the elements of the offense. (ECF No. 197 at 5–6.) However, Mr. Kuciapinski goes even further.

First, he says that "knowing that the information was not otherwise obtainable or disclosable by law" should be an element of the offense. (ECF No. 197-1 at 4.) But

neither § 2102(a) nor § 2105(a) creates a "not otherwise obtainable or disclosable by law" element. Absent such an element, the Court cannot apply the "presumption . . . that Congress intends to require a defendant to possess a culpable mental state regarding each of the statutory elements that criminalize otherwise innocent conduct." *Rehaif*, 139 S. Ct. at 2195. The Court therefore rejects this argument.

Second, he says that the Government must prove that he knew the procurement information at issue "was related to Health and Human Services (HHS) Specific Emitter Identification (SEI) contract number HHSN316201200115W-HHSP233201400203W, also titled as VESPERLILLET." (ECF No. 197-1 at 4.) The statute, however, does not require that the defendant know which specific (proposed) contract the procurement information relates to, down to the serial number or code name. In light of the evidence in a particular case, it may be that an instruction with this level of specificity is appropriate. The Court cannot make such a ruling at this stage, and so neither accepts nor rejects this proposed element.

Third, and specifically with respect to *conspiracy* to violate § 2102, Mr. Kuciapinski says that the Government must prove that he knew the procurement information "would be obtained and disclosed to Mykhael Kuciapinksi [*sic*] prior to the award of VESPERLILLET." (*Id.*) The Court agrees in the general sense that one cannot violate § 2102, and therefore cannot conspire to violate it, if the "conspiracy" relates to information about an already-awarded contract. But again, the Court must hear the evidence before it can determine whether Mr. Kuciapinski's proposed instruction fairly reflects this requirement as applied in this case. The Court would need to hear facts from which a jury could conclude, *e.g.*, that Mr. Kuciapinski lawfully

conveyed procurement information to a third party whom he instructed to re-convey the information to Ms. Kuciapinski after the contract award. The Court therefore makes no ruling on this proposal at this stage.

Fourth and finally, Mr. Kuciapinski contends that the Government must prove he knew the procurement information "would provide Mykhael Kuciapinski and her company a competitive advantage in the award of VESPERLILLET." (*Id.*) This is based on an incorrect reading of § 2105(a). As explained multiple times above, § 2105(a) may be satisfied by an *intent* to confer a competitive advantage. It does not require that the person *know* that they *will confer* a competitive advantage. The Court therefore rejects this proposed element.

### 4. Separate Definition of "Knowingly"

Mr. Kuciapinski asks for a separate definition of "knowingly" that this Court has approved in previous jury trials. (ECF No. 197 at 6.) The Government agrees with Mr. Kuciapinski's proposal. Assuming every other defendant also agrees, the Court expects to see this submitted in the normal course as a stipulated instruction.

### 5. "Obtain" and "Disclose"

Mr. Kuciapinski asks that the Court separately define "disclose" and "obtain." (ECF No. 197 at 6–7.) He pieces together certain dictionary definitions to propose the following:

> The term "obtain" means: To come into the possession or enjoyment of (something) by one's own effort or by request; to procure or gain, as the result of purpose and effort.
>
> The term "disclose" means: To make known or public (something previously held close or secret), and to open up to the knowledge of others; to make openly known, reveal, declare (secrets, purposes, beliefs, etc.)

(ECF No. 197-1 at 6 (emphasis removed).)  The Government argues that the jury need not be given any instruction in this regard.  (ECF No. 203 at 13.)

The Court will begin with "obtain."  This word appears in § 2102(b) ("a person shall not knowingly obtain [procurement information]") and § 2105(a) (specifying the penalty for "[a] person that violates section 2102 . . . to obtain or give a person a competitive advantage").  It appears from Mr. Kuciapinski's proposed definition, and from the fact that he does not also propose a definition for "give," that he has § 2102(b) in mind—which is somewhat surprising, because he is not facing a § 2102(b) charge (in contrast to Ms. Kuciapinski).

Regardless, Mr. Kuciapinski's proposed definition seeks essentially what Ms. Kuciapinski sought through her "affirmative act" proposal.  For the reasons explained in that context, the Court sees no justification for considering whether the Court must define "obtain" as Mr. Kuciapinski proposes unless and until it becomes clear that the Government is seeking to hold him liable for the passive receipt of information by Ms. Kuciapinski.

Turning to "disclose," which appears in § 2102(a), Mr. Kuciapinski's proposed definition seems aimed at leading the jury to believe that disclosure must be to the public.  Nothing in the Procurement Integrity Act suggests that Congress only meant to prohibit public disclosure, and such a construction would make little sense.  The Court need not decide at this stage whether it will give any definition of "disclose."  The Court rules, however, that any proposed definition must not state or imply a need for public disclosure.

### 6.    Defining Procurement Information

Mr. Kuciapinski proposes an instruction that defines "contractor bid and proposal

information" and "source selection information" (*i.e.*, what the Court has been referring to generically as "procurement information") by quoting the statutory definitions of those terms. (ECF No. 197 at 7; ECF No. 197-1 at 7–8.) The Government does not object to such a definition but proposes that it be included in an elements instruction, not in a separate instruction. (ECF No. 203 at 13.) This is a dispute the Court need not resolve at this stage. The parties shall confer about this when they prepare jury instructions in the normal course.

Mr. Kuciapinski's proposed instruction further says that the Government must "prove that the information charged in Count One was 'contractor bid or proposal information' *and* 'source selection information.'" (ECF No. 197 at 7 (emphasis added).) The Government points out, correctly, that § 2102(a) prohibits "contractor bid *or* proposal information or source selection information" (emphasis added). (ECF No. 203 at 13.) However, Mr. Kuciapinski appears to be quoting the indictment, which states that the conspiracy to violate § 2102 involved "disclosing to defendant Mykhael Kuciapinski bid or proposal information and source selection information." (ECF No. 1 ¶ 1 (original indictment); ECF No. 204 ¶ 1 (superseding indictment).)

The Government is not confined to proving that Mr. Kuciapinski disclosed both bid or proposal information and source selection information. "[I]ndictments typically charge alternative means of committing an offense in the conjunctive. Doing so establishes that the grand jury found that the defendant probably committed the offense via *all* the alternative means. This leaves to the petit jury to determine whether the government can prove *any* of the means." *United States v. Iverson*, 818 F.3d 1015, 1026 (10th Cir. 2016) (citations omitted; emphasis in original); *see also United States v.*

*Gunther*, 546 F.2d 861, 868–69 (10th Cir. 1976) ("It is hornbook law that crime denounced in a statute disjunctively may be alleged in an indictment in the conjunctive, and thereafter proven in the disjunctive."). Accordingly, unless the Government stipulates, the Court will not accept an instruction which requires the Government to prove a violation of § 2102(a) framed in the conjunctive.

      7.    <u>Lawful Disclosure of Procurement Information</u>

      Finally, Mr. Kuciapinski draws on case law and regulations concerning the Procurement Integrity Act to propose a somewhat elaborate instruction describing lawful disclosures of procurement information. (ECF No. 197 at 7; ECF No. 197-1 and 9–10.) The Government objects that this instruction "is an incomplete statement of the law." (ECF No. 203 at 14.) It is not clear if the Government would agree to an augmented instruction, or if the Government opposes any such instruction.

      The Court will not resolve the parties' dispute at this stage because the Court does not possess the factual context to judge its relevance, much less its accuracy. Mr. Kuciapinski's proposed instruction says, for example, that "exchanging information" of unspecified type "allow[s] potential offerors to judge whether or how they can satisfy the government's requirements." (ECF No. 197-1 at 9.) But the Court is unaware of whether any conduct that the Government asserts is criminal could instead be reasonably construed as a permissible exchange to allow an offeror to judge its ability to satisfy government requirements. Thus, any ruling on this instruction, if Mr. Kuciapinski continues to pursue it, is premature.

* * *

      Ms. Kuciapinski's Motion for Determination of Law Applicable to Jury Instructions (ECF No. 196) and Mr. Kuciapinski's Motion for Determination of Law Applicable to Jury

22

Instructions (ECF No. 197) are both GRANTED IN PART and DENIED IN PART to the extent stated above.

Dated this 21st day of January, 2020.

BY THE COURT:

_____
William J. Martinez
United States District Judge