**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge William J. Martínez**

Criminal Case No. 18-cr-429-WJM

UNITED STATES OF AMERICA,

Plaintiff,

v.

**1. MYKHAEL KUCIAPINSKI,**
2. KEVIN KUCIAPINSKI, and
3. RANDOLPH STIMAC,

Defendants.

---

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT MYKHAEL KUCIAPINSKI'S MOTION TO DISMISS FOR VIOLATION OF SPEEDY TRIAL RIGHTS**

---

Defendant Mykhael Kuciapinski ("M. Kuciapinski") has been charged in a Superseding Indictment with one count of conspiring to commit an offense against the United States by disclosing and obtaining source selection information prior to the award of a contract and defrauding the United States with respect to the contract, seven counts of unlawfully obtaining procurement information, one count of making a false statement, sixteen counts of wire fraud, and one count of committing a major fraud against the United States. (ECF No. 204.) Also charged with numerous related counts in the Superseding Indictment are M. Kuciapinski's codefendants Kevin Kuciapinski ("K. Kuciapinski") and Randolph Stimac (collectively, "Defendants").[1] (*See id.*)

[1] In K. Kuciapinski's Brief on the Interplay Between CIPA and the Speedy Trial Act, he states: "Kevin Kuciapinski, unlike his co-defendant Mykhael Kuciapinski, has not raised a concern of a speedy trial violation. Kevin Kuciapinski understands that his discovery requests and his right to present a defense implicate the prolonged but necessary litigation required by

Before the Court is M. Kuciapinski's Motion to Dismiss for Violation of Speedy

Trial Rights ("Speedy Trial Motion"), filed on February 25, 2022.  (ECF No. 578.)  The

Government filed its response on March 25, 2022 (ECF No. 591), to which M.

Kuciapinski replied on April 7, 2022 (ECF No. 598).  For the reasons explained below,

the Court dismisses the Superseding Indictment against M. Kuciapinski without

prejudice under the Speedy Trial Act, but rejects her Sixth Amendment challenge.

## I. BACKGROUND

On September 13, 2018, the Government indicted M. Kuciapinski, K. Kuciapinski,

and Stimac.  (ECF Nos. 1, 1-1.)  The original Indictment charged M. Kuciapinski with

nine counts.  (ECF No. 1.)  On September 25, 2019, the Government filed a

Superseding Indictment, which—in relevant part here—charged M. Kuciapinski with

seventeen additional counts.  (ECF Nos. 204, 228.)  Stated generally, the Superseding

Indictment charges Defendants with conspiring to commit procurement fraud in

connection with a signals intelligence government contract.[2]

This complex white collar criminal prosecution requires a detailed background

section to understand how the case arrived at its current procedural posture.  To that

---

CIPA."  (ECF No. 573 at 1.)

While it appears as though Stimac did not state his position with respect to his own rights under the Speedy Trial Act or the Sixth Amendment (*see* ECF No. 574), the Court observes that unlike M. Kuciapinski, Stimac did not file a motion to dismiss the charges filed against him in the Superseding Indictment, even though the Court permitted "any defendant" in this case to file such a motion by February 25, 2022 in its January 10, 2022 Scheduling Order (ECF No. 560 at 2).

Therefore, given the three defendants' positions, the Court proceeds on the assumption that only M. Kuciapinski believes her speedy trial rights have been violated in this case.

[2] The Government provides a detailed explanation of the factual basis for the Superseding Indictment.  (*See* ECF No. 418-1.)

end, the Court discusses the background of this case in three parts. First, the Court provides a general factual overview of the case. Next, the Court discusses the motions that the Government argues continue to toll time in this case. Finally, the Court considers the more wide-ranging events that took place both within the case and on a broader scale that affected the actions of the Government, Defendants, and the Court.

**A. Factual Overview**

M. Kuciapinski, ex-wife of K. Kuciapinski, was the owner and CEO of Gordian Polaris Sirius Corporation, which was a subcontractor to a company bidding on a government contract. According to the Government, during the relevant time periods, M. Kuciapinski did not have a security clearance.

K. Kuciapinski was an active duty United States Air Force Major who had been assigned to the Aerospace Data Facility-Colorado ("ADF-C") at Buckley Air Force Base, CO, as the Technical Director of Experiments and Initiatives Division for the National Reconnaissance Office ("NRO"). K. Kuciapinski retired in September 2016.

Stimac was a GS-15 National Security Agency ("NSA") employee at ADF-C. Stimac was a technical expert for the NSA and dealt with signals intelligence ("SIGINT"). K. Kuciapinski and Stimac worked together on several government projects. Stimac retired from the NSA in the Fall of 2015.

The Government's case focuses on an alleged agreement between K. Kuciapinski and Stimac to work on obtaining a federal contract that was intended to benefit alleged co-conspirator M. Kuciapinski. (ECF No. 544 at 4–6.) The primary focus of the contract ("Vesperlillet"), which is not classified, was to develop a streamlined process to take technology from the research and development stage to operational use among the intelligence community. To present this streamlined process

to potential stakeholders that would provide funding, Stimac and K. Kuciapinski used Signal Emitter Identification ("SEI") technology, specifically SEINE-X, a specialized segment that falls under SEI technology, to demonstrate how a new area of technology, in this case SEINE-X, could be streamlined into operations.  K. Kuciapinski is a subject matter expert regarding this technology, which was not yet in operation.

Defendants were able to obtain funding from the military for the contract.  The Government argues that it was the intent of Defendants to display positive results regarding this streamlined process to obtain further contracts regarding other novel technology.  Defendants allegedly fraudulently drafted the contract, which was awarded to a "parent company" that would sub-contract the work to M. Kuciapinski's company for a large percentage of the contract price.

According to the Government, aside from certain e-mails, which were redacted pre-indictment, none of the evidence described above was classified.  The classified sections that were redacted concern the classified aspects of the science behind signal intelligence and various names and agencies involved within that sector of the intelligence community.  The Government asserts that this case is not about the science of signal intelligence or specific classified projects, contracts, or work K. Kuciapinski was doing in the United States Air Force for the NRO.  Rather, the Government argues that this case is about three individuals that allegedly procured government funds to benefit themselves through a fraudulent government contract.

**B.    Relevant Motions**

1.    Defendants' Ends of Justice Motions

On November 7, 2018, Defendants filed a Joint and Unopposed Motion for an Ends of Justice ("EOJ") Continuance Pursuant to 18 U.S.C. § 3161 ("First EOJ Motion").

(ECF No. 74.)  On November 14, 2018, the Court granted the First EOJ Motion and excluded time from the Speedy Trial Clock to and including April 13, 2019 as to all Defendants.  (ECF No. 77.)

On February 20, 2019, Defendants filed a Second Joint and Unopposed Motion to Continue for an Ends of Justice Continuance Pursuant to 18 U.S.C. § 3161 ("Second EOJ Motion").  (ECF No. 93.)  On February 21, 2019, the Court granted the Second EOJ Motion and excluded time from the Speedy Trial Clock to and including June 13, 2019 as to all Defendants.  (ECF No. 96.)

On April 4, 2019, M. Kuciapinski filed a Revised Unopposed Motion for Ends of Justice Continuance and to Reset Trial or for Status Conference ("Third EOJ Motion"). (ECF No. 105.)  On April 9, 2019, the Court granted the Third EOJ Motion and excluded time from the Speedy Trial Clock to and including August 28, 2019 as to all Defendants. (ECF No. 109.)

On May 30, 2019, K. Kuciapinski and Stimac filed their Unopposed Motion for an Ends of Justice Continuance Pursuant to 18 U.S.C. § 3161 ("Fourth EOJ Motion"). (ECF No. 135.)  On June 6, 2019, the Court granted the Fourth EOJ Motion and excluded time from the Speedy Trial Clock to and including October 28, 2019 as to all Defendants.  (ECF No. 137.)

Since the Fourth EOJ Motion, no additional EOJ motions have been filed in this case.  However, on August 20, 2021, K. Kuciapinski filed his Request to Declare This Case Complex ("Motion to Declare Complex") under 18 U.S.C. § 3161(h)(7)(B)(ii), discussed below.  (ECF No. 530.)  Notably, the Government has filed no EOJ motions in this case, nor a motion to declare the case complex; in fact, the Government opposes

K. Kuciapinski's request to declare the case complex. (ECF No. 544.)

2. M. Kuciapinski's Motion to Sever

On September 27, 2019, K. Kuciapinski sought classified discovery pursuant to the Classified Information Procedures Act ("CIPA"), 18 U.S.C. App. III. (ECF No. 211.) Understanding that her codefendants, both of whom were government employees, would likely seek classified discovery that she believed would not pertain to her and could delay the case for years, M. Kuciapinski filed a Motion to Sever on November 15, 2019 (ECF No. 260). (ECF No. 578 at 1.) On December 23, 2019, the Government responded to the Motion to Sever. (ECF No. 275.) On January 15, 2020, M. Kuciapinski filed a reply to the Government's response. (ECF No. 292.) The Court did not set a hearing on the Motion to Sever.

On May 29, 2020, the Court issued an Order which stated the following regarding the Motion to Sever:

> ORDER as to **Mykhael Kuciapinski (1)**: Before the Court is Defendant's Motion to Sever and for Separate Trials 260. The major issue as between M. Kuciapinski and her co-defendant K. Kuciapinski is whether classified information will be a necessary part of the trial. K. Kuciapinski currently asserts that it will, but M. Kuciapinski believes otherwise and does not want to wait for resolution of the ongoing CIPA process as to K. Kuciapinski before going to trial. However, and especially given the subject matter of this prosecution, separate trials in this case would be an extraordinary burden on the Court and the Government. Moreover, due to General Order 2020-8, there is no possibility of convening a jury trial in this case before July 13, 2020, at the earliest. Accordingly, the Court continues to RESERVE RULING on M. Kuciapinski's Motion to Sever and for Separate Trials. A status report regarding the CIPA process as to K. Kuciapinski is currently due on July 1, 2020, and the Court will reevaluate M. Kuciapinski' s motion at that time.

(ECF No. 348.)

On July 9, 2020, the Court revisited the Motion to Sever. (ECF No. 362.) In pertinent part, the Court noted that K. Kuciapinski's counsel would soon receive the required government security clearances that would enable him to discuss classified material with his client. (*Id.* at 2.) Further, the Court referenced General Order 2020-10, which was the most recent general order at the time addressing jury trials during the COVID-19 pandemic. (*Id.*) The Court observed that in the General Order, the District of Colorado had begun organizing pilot jury trials as authorized by the chief judge, and that realistically,

> there is very little chance that this process will be scaled up to accommodate an 8-day criminal trial (with twelve jurors, plus alternates) for at least two more months, at the very earliest. Thus, even if the Court were to consider severing Mykhael Kuciapinski's trial from Kevin Kuciapinski's (or Randolph Stimac's), the possibility of holding a jury trial for Mykhael Kuciapinski anytime in the next two months is very remote.
>
> For these reasons, the Court continues to RESERVE RULING on Mykhael Kuciapinski's Motion to Sever and for Separate Trials (ECF No. 260). The Court will continue to reevaluate this motion periodically as matters pertaining to Kevin Kuciapinski develop and the Court issues additional orders relating to COVID-19.

(*Id.* at 2–3.)

On January 6, 2022, the Court held a CIPA Section 2 scheduling conference. (ECF No. 559.) Relevant to the Motion to Sever, the Court directed the parties to file supplemental briefing addressing the discussion of the interplay between CIPA and the Speedy Trial Act in two recent Tenth Circuit opinions: *United States v. Muhtorov*, 20 F.4th 558 (10th Cir. 2021) and *United States v. Jumaev*, 20 F.4th 518 (10th Cir. 2021). (ECF No. 560 at 2–3.) That briefing became ripe on March 4, 2022. (*See id.*; ECF No.

587.)

The Motion to Sever remains pending.

3. M. Kuciapinski's Motion for Discovery

On December 14, 2020, M. Kuciapinski filed her Motion for Discovery, to Preserve Evidence, and for Leave to File Further Motions ("Motion for Discovery"). (ECF No. 412.) The Government filed a response to the Motion for Discovery on January 11, 2021. (ECF No. 420.) M. Kuciapinski filed a reply on January 22, 2021. (ECF No. 424.) The Court did not set a hearing on the Motion for Discovery.

On November 17, 2021, the Court issued its Order Granting In Part, Denying In Part, and Taking Under Advisement In Part Defendant Mykhael Kuciapinski's Motion for Discovery, to Preserve Evidence, and For Leave to File Further Motions ("Discovery Order"). (ECF No. 550.) Among other things, the Court only permitted M. Kuciapinski leave to file a motion for leave to file additional motions regarding specific pieces of discovery. (*Id.* at 23.) Further, the Court ordered the Government to conduct a review for additional documents and provide the Court a status update by December 29, 2021 (*id.*), which it did on December 14, 2021 (ECF No. 554).

On November 18, 2021, the Court and counsel for Defendants received the following information via e-mail[3] from the Government concerning the portion of the Order reserving ruling on the Motion for Discovery:

> The government believes that ex parte review will still be required but respectfully requests that the Court refrain from scheduling that review until after the government has filed its motion pursuant to section 4 of the Classified Information Procedures Act ("CIPA"). That motion will address material requested by Mr. and Ms. Kuciapinski in their motions for

[3] This e-mail was not filed on the CM/ECF docket.

> discovery as well as other potentially discoverable, classified material the government has identified while preparing the case for trial. At this point, the government expects to file that motion no later than January 2, 2022.

The Government filed its Classified Ex Parte, *In Camera* Memorandum of Law and Motion for a Protective Order Pursuant to Section 4 of the Classified Information Procedures Act and Rule 16(d)(1) of the Federal Rules of Criminal Procedure ("Section 4 Motion") on March 7, 2022, consistent with the deadlines set in the Court's Scheduling Order, which was filed after the January 6, 2022 CIPA Section 2 scheduling conference. (ECF No. 588.) The Section 4 Motion remains pending, and consequently, the Court has not ruled on the deferred portion of the Motion for Discovery.

4. K. Kuciapinski's Motion to Declare Case Complex

On July 8, 2021, the Government filed a motion for a CIPA Section 2 scheduling conference. (ECF No. 517.) On August 20, 2021, K. Kuciapinski filed his Motion to Declare Complex. (ECF No. 530.) On September 3, 2021, M. Kuciapinski (ECF No. 542) and the Government (ECF No. 544) filed responses in opposition; Stimac took no position on the request (ECF No. 545). No reply briefs were filed.

On November 30, 2021, the Court issued an order granting the Government's motion for a CIPA Section 2 scheduling conference and taking under advisement the Motion to Declare Complex. (ECF No. 553.) In that order, the Court set a CIPA Section 2 scheduling conference and directed the parties to be prepared to discuss the Motion to Declare Complex. (*Id.*)

In its Scheduling Order following the January 6, 2022 CIPA Section 2 scheduling conference, the Court took under advisement the Motion to Declare Complex. (ECF No. 560 at 3.) The Motion to Declare Complex remains pending.

### C. Broader Events

Before delving into the intricacies of the speedy trial analysis, the Court believes it necessary to detail the case-specific and global events beyond the Government's control which brought this case to its current procedural posture. The Court will not reference every individual docket entry, status report, and explanation of delay by any given party, but will provide an overview for context.

First, and probably most important, is the impact of K. Kuciapinski's introduction of the issue of classified discovery documents in this case. On September 27, 2019, K. Kuciapinski filed his Motion and Memorandum of Law In Support of a Pretrial Conference Pursuant to Section 2 of CIPA, in which he explained that the purpose of the motion was to apprise the Court of the applicability of CIPA to classified information that had arisen in the case. (ECF No. 210.) M. Kuciapinski did not seek classified information and sought to sever her case from her codefendants' to expedite her case. (ECF No. 542 at 1.) Stimac has apparently been cooperating with the Government in this case and purportedly has been working (for a very long time, it appears) toward a potential resolution without a trial as the case relates to him. (ECF No. 545 at 1.)

Throughout this litigation, the Government has maintained its position that none of the allegations in the Superseding Indictment concern classified information, nor does the Government expect to use classified information in its case in chief. (*See, e.g.*, ECF No. 82 at 28; ECF No. 544 at 4.) Rather, the Government argues that this case concerns criminal misconduct in the unclassified bidding process. (ECF No. 544 at 4.)

Despite the Government's position, K. Kuciapinski's interjection of classified discovery requests in this case, as M. Kuciapinski puts it, "began a rift in this case's progression that would turn into a chasm." (ECF No. 542 at 2.) Following K.

Kuciapinski's initial motion for a CIPA Section 2 scheduling conference, the Government filed a status report in which it stated that it spoke with a trial attorney in the Department of Justice Counterintelligence and Expert Control Section, since much of the requested discovery was considered classified. (ECF No. 251 at 2.) Pursuant to CIPA, the Counterintelligence and Export Control Section made a Prudential Search Request with the federal agencies—including the NRO, NSA, and Army Tencap—controlling the discovery that K. Kuciapinski requested in his Motion for Specific Discovery, filed on September 27, 2019 (ECF No. 211). (ECF No. 251 at 2.) Once the discovery was received by DOJCECS, it was reviewed by the Government. (*Id*.) At the time, the Government anticipated that based on K. Kuciapinski's discovery requests, it would take at a minimum four months for the agencies to disclose the materials requested, for the Government to review them, and for the Government to file a CIPA Section 4 motion. (*Id*.) Additionally, there was a need for counsel for the Government to be approved for a classified computer system and network so the Government's CIPA Section 4 motion could be filed with the Court on a classified account. (*Id.*)

Second, viewing classified materials requires certain security clearances, which the attorneys and Court staff in this case, other than the undersigned, did not have. Therefore, as early as October 15, 2019, the Court directed the Government to cooperate in facilitating the initiation of the security clearance process on behalf of all defendants and their counsel. (ECF No. 240 at 1.) According to the Government, background checks for the parties requested by Defendants could not begin until there was a "need to know" on their behalf regarding classified material, which is after the CIPA Section 4 process. (ECF No. 251 at 3.) Additionally, the Court's staff had to

receive security clearances required to work on this case.  (*Id.* at 1.)

On November 15, 2019, M. Kuciapinski filed a Response to the Government's Status Report and Notice of Withdrawal from CIPA Motion in which she declined to participate in the procedures outlined by the Government in its status report (*id.*) and the discovery requests K. Kuciapinski had made (ECF No. 211).  (ECF No. 259.)  That same day, she filed her Motion to Sever.  (ECF No. 260.)

On January 6, 2020, the Government filed another status report updating the Court on the progress of its CIPA-related inquiries.  (ECF No. 284.)  At that point, the Court's staff was cleared regarding background checks and only needed one final administrative step to enable them to review classified information. (*Id.* at 1.)  The agencies were in the process of collecting the classified discovery.  However, K. Kuciapinski's lawyer who originally filed the CIPA Section 2 motion was no longer representing him, further delaying the case.  On March 4, 2020, the Government explained that the discovery process was further delayed because of the complexity of the discovery requests and the numerous agencies involved.  (ECF No. 312.)  And, it was not until June 1, 2020 that Clifford Barnard, K. Kuciapinski's current counsel, obtained an interim TOP SECRET/SENSITIVE COMPARTMENTED INFORMATION ("TS/SCI") security clearance pending the outcome of a full background investigation. (ECF No. 354 at 1.)  At the CIPA Section 2 scheduling conference held in January 2022, the Court directed the Government to assist K. Kuciapinski's defense team in obtaining security clearances as soon as practicable.  (ECF No. 560.)

Third, the lack of an accredited sensitive compartmented information facility ("SCIF") at the federal courthouse in Denver, Colorado—a requirement for Mr. Barnard

to discuss classified material with K. Kuciapinski—further complicated matters.  Even though Mr. Barnard had obtained an interim security clearance, in July 2020, the Government explained that the secure room in the courthouse was not accredited as a SCIF, and because of COVID-19 travel restrictions, there was no available estimate on when the room could be reaccredited as a SCIF.  (ECF No. 354 at 2.)  It was not until several months later, in November 2020, that the Court received notice that the SCIF was accredited and ready for use in this case.  (ECF No. 406.)

Which brings us to the final delaying event in this case: the COVID-19 pandemic.  The impact of the pandemic on the parties, discovery, and the entire court system cannot be overstated.  The parties experienced delays in obtaining discovery from federal agencies due to COVID-19 travel restrictions.  The District of Colorado issued numerous General Orders explaining that at various points only "pilot" trials hand-selected by the chief judge would proceed, and at other times, for very protracted periods of time, often several months in length, no trials were held at all.  While the precise number of days lost to the pandemic cannot be calculated with any reasonable degree of precision, the Court believes it is critical to the understanding of the protracted nature of this litigation and its impact on M. Kuciapinski's participation in this case, which brought her to file the Speedy Trial Motion now before the Court.

## II. LEGAL STANDARDS

### A.    Speedy Trial Act

"The dual purpose of the Speedy Trial Act is to protect a defendant's constitutional right to a speedy indictment and trial, and to serve the public interest in bringing prompt criminal proceedings."  *United States v. Saltzman*, 984 F.2d 1087, 1090 (10th Cir. 1993) (quoting *United States v. Noone*, 913 F.2d 20, 28 (1st Cir. 1990)).  The

Speedy Trial Act reads in relevant part:

> In any case in which a plea of not guilty is entered, the trial of a defendant charged in an information or indictment with the commission of an offense shall commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs.  If a defendant consents in writing to be tried before a magistrate judge on a complaint, the trial shall commence within seventy days from the date of such consent.

18 U.S.C. § 3161(c)(1).

The Speedy Trial Act provides that certain periods of delay are not included in computing the time limits for trial.  *Id.* at § 3161(h)(1)–(8).  Three categories of exclusions under the Speedy Trial Act are relevant in this case: delays attributable to pretrial motions, delays attributable to codefendants, and ends of justice continuances.

First, 18 U.S.C. § 3161(h)(1)(D) provides for the exclusion of periods of "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion."  Additionally, § 3161(h)(1)(H) excludes "delay reasonably attributable to any period, not to exceed thirty days, during which any proceeding concerning the defendant is actually under advisement by the court."

The Tenth Circuit has "explained that these subsections work in concert such that 'if a motion is one that does not require a hearing, the Act excludes time through the period of its prompt disposition, but only if that period does not exceed thirty days from the date the motion is taken under advisement.'"  *United States v. Margheim*, 770 F.3d 1312, 1318 (10th Cir. 2014) (quoting *United States v. Williams*, 511 F.3d 1044, 1048 (10th Cir. 2007)).  In other words, "[*i*]*f under advisement,* the maximum excludable

delay for the court's determination is 30 days." *Id.* at 1322 (quoting *United States v. Willie,* 941 F.2d 1384, 1387 (10th Cir. 1991) (emphasis in original)).

In *Henderson v. United States*, 476 U.S. 321, 331 (1986), the Supreme Court instructed that "[t]he provisions of the Act are designed to exclude all time that is consumed in placing the trial court in a position to dispose of a motion." The Supreme Court defined "under advisement" to begin at "the time the court receives all the papers it reasonably expects." *Id.* at 329. In *Margheim*, the Tenth Circuit stated that it has interpreted *Henderson*'s holding to mean that if the district court seeks "more information upon which to make its ruling" on a motion, the advisement period does not begin "[u]ntil the court obtains that information." *Margheim*, 770 F.3d at 1322 (quoting *Willie*, 941 F.2d at 1388 n.2).

Second, time is excluded for a "reasonable period of delay when the defendant is joined for trial with a codefendant as to whom the time for trial has not run and no motion for severance has been granted." 18 U.S.C. § 3161(h)(6).

Third, time is excludable for

> [a]ny period of delay resulting from a continuance granted by any judge on his own motion or at the request of the defendant or his counsel or at the request of the attorney for the Government, if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial. No such period of delay resulting from a continuance granted by the court in accordance with this paragraph shall be excludable under this subsection unless the court sets forth, in the record of the case, either orally or in writing, its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial.

*Id.* at § 3161(h)(7)(A).

"When a defendant demonstrates a violation of the Act, the proper remedy is dismissal of the indictment." *Margheim*, 770 F.3d at 1318 (citing 18 U.S.C. § 3162(a)(2)). "[T]he district court retains broad discretion whether to dismiss the indictment with or without prejudice." *Id.* (quoting *United States v. Abdush-Shakur*, 465 F.3d 458, 462 (10th Cir. 2006)).

**B. Sixth Amendment Speedy Trial Right**

The Sixth Amendment states that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." *United States v. Seltzer*, 595 F.3d 1170, 1175 (10th Cir. 2010). The remedy for violating this right is dismissal of the indictment. *See id.* "[I]t is the prosecution's burden (and ultimately the court's) and not the defendant's responsibility to assure that cases are brought to trial in a timely manner." *Id.* at 1175–76.

In *Barker v. Wingo*, 407 U.S. 514 (1972), the Supreme Court enumerated four factors to consider in the Sixth Amendment speedy trial analysis: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) the prejudice to the defendant. *Id.* at 530. "[T]hese factors have no talismanic qualities; courts must still engage in a difficult and sensitive balancing process." *Id.* at 533. But the Court need not go further than the first factor if the delay was not "presumptively prejudicial." *Doggett v. United States*, 505 U.S. 647, 651–52 (1992) ("Simply to trigger a speedy trial analysis, an accused must allege that the interval between accusation and trial has crossed the threshold dividing ordinary from presumptively prejudicial delay . . . ." (internal quotation marks omitted)); *United States v. Yehling*, 456 F.3d 1236, 1243 (10th Cir. 2006) ("The remaining factors are examined only if the delay is long enough to be presumptively prejudicial.").

The Tenth Circuit has stated that "delays approaching one year are presumptively prejudicial," *United States v. Larson*, 627 F.3d 1198, 1208 (10th Cir. 2010), but also that eleven months is not presumptively prejudicial, *Abdush-Shakur*, 465 F.3d at 465 ("[T]he parties disagree as to whether the relevant period of delay under consideration was eleven or fourteen months. The latter delay, but not the former, might qualify as presumptively prejudicial."). The Tenth Circuit has also characterized "a year" as the "bare minimum" of presumptive prejudice. *Margheim*, 770 F.3d at 1326.

## III. ANALYSIS

### A. Effect of Superseding Indictment on the Speedy Trial Clock

The parties appear to disagree on the effect of the Superseding Indictment on the Speedy Trial Clock. As this issue affects the subsequent analysis, the Court begins here.

The original Indictment charged M. Kuciapinski with conspiracy to commit procurement fraud, unlawful obtaining of procurement information, and making a false statement. (ECF No. 1.) The Superseding Indictment charges M. Kuciapinski with the aforementioned counts, as well as new charges for wire fraud and major fraud against the United States. (ECF No. 204.)

M. Kuciapinski argues that a "superseding indictment does not reset the speedy-trial clock for offenses charged, or required to be joined with those charged, in the original indictment." (ECF No. 578 at 2 (citing *United States v. Young*, 528 F.3d 1294, 1296 (11th Cir. 2008)).) She states that "the Government filed an original indictment charging [her] with nine (9) criminal counts and later filed a superseding indictment charging her with seventeen (17) additional counts." (*Id.* at 5 (citing ECF Nos. 1, 1-1, 204, 228).) Accordingly, she argues, "there are two separate Speedy Trial Clocks

running as to the charges in the original and superseding indictments."  (*Id.*)

In response, the Government argues that "[w]hen a superseding indictment is filed, the Speedy Trial Clock is reset to zero."  (ECF No. 591 at 12 (citing *United States v. Ray*, 899 F.3d 852, 862 n.4 (10th Cir. 2018)).)  Consequently, the Government argues that as of the filing of the Superseding Indictment on September 25, 2019, the 70-day Speedy Trial Clock was reset to zero in this case.  (*Id.*)  Notably, the Government does not acknowledge the nuance in M. Kuciapinski's argument; in other words, the Government fails to distinguish between charges brought in the original Indictment versus new charges brought in the Superseding Indictment and whether the Speedy Trial Clock is only reset with respect to the new charges.  However, based on the Government's Speedy Trial calculations in the table attached to its response, it appears as though the Government argues that the Speedy Trial Clock was reset as to all charges (including those brought in the original Indictment) when the Superseding Indictment was filed.  (*See* ECF No. 591-1.)

"As a general rule, new Speedy Trial Act periods begin to run with respect to an information or indictment adding a new charge not required to be brought in the original indictment."  *United States v. Andrews*, 790 F.2d 803, 808 (10th Cir. 1986); *see also United States v. Martinez*, 542 F. Supp. 3d 1170, 1208 (D.N.M. 2021) (same) (citing *United States v. Apperson*, 441 F.3d 1162, 1181 (10th Cir. 2006) ("[T]he filing of a superseding indictment," however, "does not serve to toll the speedy trial clock" for the offenses charged in the original indictment.)).  "However, when the later charge is merely a part of or only 'gilds' the initial charge, the subsequent charge is subject to the same Speedy Trial Act limitations imposed on the earlier indictment."  *Martinez*, 542 F.

Supp. 3d at 1185.

At least one court in the Tenth Circuit has observed that sometimes "it is unclear whether a superseding indictment adds a new charge not subject to the original Speedy Trial Act clock or whether the new charge only gilds the initial charge. . . ." *Id.* at 1209–10 (internal quotation marks omitted).  In performing this analysis, courts examine whether the facts supporting the new charges are different than the original charges. *See Andrews*, 790 F.2d at 809 (where "[t]he information alleges no facts different from those underlying the conspiracy count," the new charge merely gilds the underlying count).  Therefore, if a superseding indictment merely expands on the original charge, rather than adding a new charge, with new alleged facts, then it could possibly be a "gilded" charge.  *See Martinez*, 542 F. Supp. 3d at 1210 (citing *Ray*, 899 F.3d at 863 n.4).  However, where a new charge is distinct from the original charge and adds new alleged facts, it does more than merely annotate in more detail the same charge alleged in the initial indictment.  *See id.* (citing *United States v. Bailey*, 111 F.3d 1229, 1236 (5th Cir. 1991)).

Notably, both M. Kuciapinski and the Government fail to explicitly address  the subtleties in the Tenth Circuit case law regarding whether the charges in the Superseding Indictment are part of or "gild" the charges in the original Indictment. Nonetheless, the Court finds that the new charges in the Superseding Indictment, which include wire fraud and major fraud against the United States, are sufficiently distinct from the charges in the original Indictment such that a new Speedy Trial Clock began running with respect to the new charges.  Here, a review of the Superseding Indictment shows that the wire fraud counts contain numerous additional factual details regarding

e-mails exchanged among M. Kuciapinski and her codefendants and other individuals who are not parties to this prosecution. (*See* ECF No. 204 at 22–24.) Similarly, the major fraud against the United States count is distinct from the original charges of conspiracy to commit procurement fraud,[4] unlawful obtaining of procurement information, and making a false statement.

Therefore, as M. Kuciapinski argues, the Court agrees that the Superseding Indictment did not reset the Speedy Trial Clock for the counts alleged in the original Indictment.

**B. Speedy Trial Act**

1. Whether Delay Attributable to a Codefendant Is Reasonable

In determining whether delay attributable to a codefendant is reasonable, a court must examine all relevant circumstances. The Tenth Circuit has articulated three factors, known as the "*Vogl* factors," to guide district courts in this exercise: "(1) whether the defendant is free on bond, (2) whether the defendant zealously pursued a speedy trial, and (3) whether the circumstances further the purpose behind the exclusion to 'accommodate the efficient use of prosecutorial and judicial resources in trying multiple defendants in a single trial.'" *Margheim*, 770 F.3d at 1319 (quoting *United States v. Vogl,* 374 F.3d 976, 984 (10th Cir. 2004)).

M. Kuciapinski argues that applying her codefendants' exclusion periods to her own Speedy Trial Act calculations would be unreasonable. (ECF No. 578 at 9.)

[4] To the extent any of the new charges relate to the conspiracy count in the original Indictment, long-standing case law demonstrates that the two offenses are distinct. *See Callanan v. United States*, 364 U.S. 587, 593 (1961) ("The distinctiveness between a substantive offense and a conspiracy to commit is a postulate of our law. 'If [*sic*] has been long and consistently recognized by the Court that the commission of the substantive offense and a conspiracy to commit it are separate and distinct offenses.'") (quoting *Pinkerton v. United States*, 328 U.S. 640, 643 (1946)).

Specifically, she contends that such tolling periods "come from defendant-specific motions to modify conditions of release, for discovery and attempts to obtain classified information, for extensions of time, for leave to file briefing with excess pages, and to restrict various pleadings." (*Id.* (citing ECF Nos. 211, 350, 369, 371, 410, 446, 448, 485, 492, 530).)  Given that: M. Kuciapinski did not join these motions that (in her view) have no bearing on the case against her; she is excluded by judicial restriction policies from seeing many of these motions; and she sought to avoid delays created by classified information by filing a motion to sever over two years ago and before certain motions were filed, M. Kuciapinski argues that it would be unreasonable to apply the exclusion periods created by these motions to her.  (*Id.*)  Notably, M. Kuciapinski takes the position that even if her codefendants' exclusion periods *were* applied to her, all counts against her should *still* be dismissed for violation of the Speedy Trial Act.  (*Id.*)

Despite M. Kuciapinski's arguments, the Court finds that the *Vogl* factors weigh in favor of the Government's position that any delay attributable to M. Kuciapinski's codefendants is reasonably applied to her Speedy Trial Act calculations.  Turning to the first *Vogl* factor, the Court agrees with the Government's position that the first factor favors it, as M. Kuciapinski is free on bond with conditions.  (ECF No. 591 at 15.)  She can seek employment, and attend school, religious services, and other activities approved by the Court.  (*Id.*)  The Court notes that the Tenth Circuit has quoted *United States v. Loud Hawk*, 474 U.S. 302, 311 (1986), for the proposition that a "substantial [ ] impairment of liberty" also befalls defendants who are released on bond."  *Margheim*, 770 F.3d at 1319 n.2.  However, for the aforementioned reasons, the Court concludes that M. Kuciapinski is not suffering such a substantial impairment of liberty that this

factor ultimately favors her.

The Tenth Circuit instructs that the second factor, zealous pursuit of speedy trial rights, "requires a close look at whether a defendant sought a severance from codefendants or filed motions for continuances or dismissal during the challenged time period."  *Id.* (citing *United States v. Tranakos*, 911 F.2d 1422, 1426 (10th Cir. 1990). This factor weighs in M. Kuciapinski's favor.

It is seemingly undisputed that M. Kuciapinski filed the Motion to Sever as soon as was practicable when it became apparent that this case would involve CIPA and discovery of classified information.  However, the Government also correctly points out that she also filed several substantive motions (including a substantial discovery motion (ECF No. 412)), five motions for her lawyers to withdraw, and an emergency motion to stay during the relevant timeframe.  (ECF No. 591 at 15.)

Despite the fact that M. Kuciapinski filed numerous motions during the course of this protracted litigation, on balance, the Court finds that her timely filing of the Motion to Sever, and the fact that the Court has yet to rule on that motion, tips the scale in her favor on the second factor.  *See Margheim*, 770 F.3d at 1320 ("Critically, at no point did Mr. Margheim move for a severance—and this, in our view (when considered in the context of his other pretrial conduct), fatally undercuts Mr. Margheim's argument."); *Tranakos*, 911 F.2d at 1426 (chiding defendant who "never sought a severance from the other defendants"); *United States v. Theron*, 782 F.2d 1510, 1512 (10th Cir. 1986) (noting as favorable to the defendant's cause the fact that he "moved for a severance and an immediate trial, did not join any of his codefendants' motions, and was willing to be tried immediately even if it meant waiving certain rights"); *United States v. Vasquez*,

918 F.2d 329, 336–37 (2d Cir. 1990) (preventing codefendants from arguing unreasonable delay when neither moved to sever in a timely manner).

Finally, the Court examines the third *Vogl* factor—effective use of resources. "When examining the relevant circumstances, [the Tenth Circuit] consider[s] . . . the obvious purpose behind the exclusion; that is, to accommodate the efficient use of prosecutorial and judicial resources in trying multiple defendants in a single trial." *Margheim*, 770 F.3d at 1320 (internal quotation marks and citation omitted).  The Tenth Circuit teaches that "[a] single trial is ideal when the government plans to 'recite a single factual history, put on a single array of evidence, and call a single group of witnesses.'" *Id.* (quoting *Vogl*, 374 F.3d at 984).  The inquiry associated with this aspect of the analysis is highly fact-sensitive.  *See id.*

The undersigned observed early in the course of this litigation that given the extremely complex subject matter of this prosecution, separate trials would be "an extraordinary burden on the Court and the Government."  (ECF No. 348.)  The prolonged nature of this litigation, with its excruciating discovery delays, only reinforces the Court's belief that it was correct in making this observation.  Accordingly, the Court concludes that the third factor also weighs in the Government's favor.

Given the foregoing, the Court finds that on balance, delay attributable to M. Kuciapinski's codefendants is reasonable.

2. Speedy Trial Calculation[5]

With respect to the original Indictment, the Speedy Trial Clock began running on October 5, 2018, the date of M. Kuciapinski's initial appearance. (ECF No. 11; ECF No. 578-1 at 18; ECF No. 591-1 at 1.) With respect to the Superseding Indictment, the Speedy Trial Clock began running on September 25, 2019, the day the Government filed the Superseding Indictment. (ECF No. 204; ECF No. 578 at 19; ECF No. 591-1 at 31.) As explained above, *see supra* Part III.A, there are two Speedy Trial Clocks in this case.

According to the Government's Speedy Trial calculations, there are 39 days remaining on the Speedy Trial Clock with respect to the original Indictment, and 70 days remaining on the Speedy Trial Clock with respect to the Superseding Indictment. (ECF No. 591-1 at 3, 8.) In other words, the Government concedes that some time was non-excludable with respect to the original Indictment; however, the Government contends that the multitude of motions filed in this case by all of the parties have tolled—and continue to toll—the Speedy Trial Clock to this day. (*See generally id.*)

By contrast, according to M. Kuciapinski's Table B: Speedy Trial Act Calculations Including Co-Defendants' Exclusion Periods ("Table B"), she contends that 236 days have gone untolled with respect to the charges set forth against her in the original Indictment, and 214 days have gone untolled as to the charges set forth against her in the Superseding Indictment. (ECF No. 578-1 at 4.) Accordingly, she argues that the

[5] For the purposes of this Order, the Court relies on the dates and calculations in the parties' briefs. (ECF Nos. 578, 591, and 598.) The Court acknowledges that M. Kuciapinski's reply was filed on April 7, 2022, and therefore, the Speedy Trial Clock began running again in connection with the Speedy Trial Motion thirty days later. While the parties have filed other motions since April 7, 2022, the Court does not consider them in its Speedy Trial calculations for the purposes of this Order.

Speedy Trial Clock has run as to all charges against her, so all charges must be dismissed.  (ECF No. 578 at 5.)  Moreover, she asserts that the number of untolled days in Table B is a "conservative figure, which based on reasonableness should be higher."[6] (*Id.* at 10.)

The Speedy Trial calculations in this case are unusually complex, due to the fact that there are three Defendants, two Speedy Trial Clocks, and disagreement between M. Kuciapinski and the Government as to when certain motions were "under advisement" within the meaning of *Henderson*.  To streamline its analysis, the Court notes that the Government does not dispute the calculations in either of the Speedy Trial Act Calculation tables (Tables A and B) that M. Kuciapinski provided in connection with her Speedy Trial Motion.  (*See generally* ECF No. 591.)  Of course, the Court understands that the Government fundamentally disagrees with M. Kuciapinski concerning when certain motions technically were "under advisement" by the Court—if ever—which affects the Government's Speedy Trial table calculations.  (*Id.*)

However, as the Court explains below, the Court determines that M. Kuciapinski has correctly calculated Speedy Trial time because her understanding of when certain motions came under advisement is correct under Tenth Circuit and Supreme Court law, as well as the Court's conclusions regarding the procedural developments in this case. Therefore, to the extent necessary, the Court adopts the calculations contained in M.

---

[6] In Table A: Speedy Trial Act Calculations for Filings Relating to Ms. Kuciapinski ("Table A"), she contends that 474 days are untolled with respect to the original Indictment and 448 days are untolled with respect to the Superseding Indictment.  (ECF No. 578 at 7.)  Table A only relates to her own filings.

However, because the Court has determined that delays attributable to M. Kuciapinski's codefendants are reasonable, the Court nonetheless relies on the calculations in Table B, as opposed to M. Kuciapinski's preferred Table A.

Kuciapinski's Table B. (ECF No. 578-1.)

The main points of contention concerning the parties' calculations center on three motions discussed in the Government's brief: the Motion to Sever, the Motion for Discovery, and the Motion to Declare Complex.[7]

a. *Motion to Sever*

M. Kuciapinski contends that the Motion to Sever was under advisement on January 15, 2020, when she filed a reply to the Government's response. (ECF No. 292.) The Court did not set a hearing on the Motion to Sever. Therefore, M. Kuciapinski states that the Motion to Sever only tolled the Speedy Trial Clock for 30 days from the day her reply brief was filed, until February 15, 2020. (ECF No. 598 at 4, 8.)

However, the Government argues that certain events in the case support its position that the Motion to Sever *continues* to toll the Speedy Trial Clock. (ECF No. 591 at 5, 14.) The Government first points to the fact that on May 29, 2020, the Court reserved ruling on the Motion to Sever after considering the subject matter of this prosecution and how separate trials would be an extraordinary burden on the Court and the Government. (ECF No. 348.) Additionally, the Government highlights the Court's July 9, 2020 Order, which again reserved ruling on the Motion to Sever. (ECF No. 362.) Next, the Government states that at the January 6, 2022 CIPA Section 2 scheduling

[7] The Government also contends that M. Kuciapinski's Second Motion to Suppress Evidence and the instant Speedy Trial Motion are currently pending and result in the Speedy Trial Clock being tolled. (ECF No. 591 at 8.) However, as noted above, the Court has determined that the calculations in Table B are correct, which means the number of untolled days on both of M. Kuciapinski's Speedy Trial Clocks far exceeds 70 days. Therefore, the Court need not address whether M. Kuciapinski's Second Motion to Suppress Evidence and the instant Speedy Trial Motion are currently tolling time because they cannot not salvage the Government's position.

conference, the Court ordered additional briefing regarding the Motion to Sever, specifically directing the parties to address the interplay between CIPA and the Speedy Trial Act in the recent Tenth Circuit opinions *United States v. Muhtorov*, 20 F.4th 558 (10th Cir. 2021) and *United States v. Jumaev*, 20 F.4th 518 (10th Cir. 2021). (ECF No. 560 at 2–3.) The final reply brief on this issue was filed on March 4, 2022. (ECF No. 587.)

As stated above, the Court never held a hearing on the Motion to Sever. In its response, the Government concedes that if the Court

> decides not to have a hearing on the Motion to Sever and is in possession of all the information that it needs to render an order on the motion, the Speedy Trial Clock will remain tolled until and up to **April 3, 2022**, which is the 30-day maximum excludable period under § 3161(h)(1)(H). If this court needs further information, to include holding a hearing, the Speedy Trial Clock is still tolled under § 3161(h)(1)(D).

(ECF No. 591 at 14 (emphasis added).)

The Court disagrees with the Government's position that the supplemental briefing on the interplay between CIPA and the Speedy Trial Act constitutes briefing which continued to toll the Speedy Trial Clock. Rather, the Court agrees with M. Kuciapinski's position that the Motion to Sever was under advisement on January 15, 2020, when she filed her reply, and only 30 days may be excluded from the Speedy Trial Clock once a motion is under advisement. Therefore, the Speedy Trial Clock began running again on May 30, 2020, after the Court ruled on M. Kuciapinski's first Motion to Suppress. (ECF No. 578-1 at 3.)

The Court understands that the Government may have *assumed* that the Court's May 29, 2020 and July 9, 2020 Orders continued to toll the Speedy Trial Clock with

respect to the Motion to Sever.  And the Court accepts some responsibility in connection with the length of time the Motion to Sever has been pending, which it will discuss more later in the Order.  However, no party had filed an EOJ motion, and in its Orders, the Court made none of the findings required by the Speedy Trial Act which could constitute EOJ findings sufficient to toll the Speedy Trial Clock.  18 U.S.C. § 3161(h)(7)(B).  By January 15, 2020, the Court had received all the papers it reasonably expected on the Motion to Sever.  *See Henderson*, 476 U.S. at 329.  The Court agrees with M. Kuciapinski's statement that *Muhtorov* and *Jumaev* did not issue until December 8, 2021, and therefore the Court could not reasonably have expected briefing on those cases at the time M. Kuciapinski filed her reply.  (ECF No. 598 at 5–6.)  To the extent there was any lingering doubt on the matter, the Government was free to file an EOJ motion.  It notably, however, did not.

And, notwithstanding the foregoing, the Government in its response agreed that unless the Court set a hearing on the Motion to Sever (which it has not and will not), that the Speedy Trial Clock would only remain tolled up to April 3, 2022.  (ECF No. 591 at 14.)  The Court notes that over 100 days have elapsed since April 3, 2022—well over the 70-day limit imposed by the Speedy Trial Act.

Therefore, the Court concludes that the Motion to Sever tolled no time past February 15, 2020.

   b. *Motion for Discovery*

M. Kuciapinski argues that the Motion for Discovery was under advisement on January 22, 2021, when she filed her reply to the Government's response.  (ECF No. 424.)  The Court did not set a hearing on the Motion for Discovery.  Therefore, M. Kuciapinski states that the Motion for Discovery only tolled the Speedy Trial Clock for 30

days from the day her reply brief was filed, until February 22, 2021. (ECF No. 598 at 8.)

However, the Government argues that the Discovery Order (ECF No. 550) tolled the Speedy Trial Clock. (ECF No. 591 at 14.) In the Discovery Order, the Court directed the Government to file a supplemental status report, which it filed on December 14, 2021.[8] (ECF No. 554.) Specifically, the Government argues that because the Court took a portion of the Motion for Discovery under advisement in the Discovery Order, that indicated that the Court "would be seeking further information to render a decision regarding defendant M. Kuciapinski's discovery requests." (ECF No. 591 at 14.) And therefore, according to the Government, because the Court is still seeking further information with respect to the Motion for Discovery, the Speedy Trial Clock remains tolled. (*Id.*)

The Court disagrees with the Government. As stated above, the Court understands that the Government may have *assumed* that the Court's Discovery Order continued to toll the Speedy Trial Clock. However, as with the Motion to Sever, no party filed an EOJ motion, and in the Discovery Order, the Court made none of the findings required by the Speedy Trial Act which could constitute EOJ findings sufficient to toll the Speedy Trial Clock. *See* 18 U.S.C. § 3161(h)(7)(B). By January 22, 2021—or at the very least by December 14, 2021—the Court had received all the papers it reasonably expected on the Motion for Discovery and ruled accordingly. *See Henderson*, 476 U.S.

[8] Like M. Kuciapinski (ECF No. 598 at 9), the Court concludes that neither the Government's Response to Court Order Document 550 (ECF No. 554) nor its November 18, 2021 e-mail regarding whether the Court needed to conduct an *ex parte* hearing supports the Government's position that the Discovery Order continues to toll time in this case. The Court ordered no further supplemental briefing, and the Court agrees with M. Kuciapinski that any additional papers the Government intended to file in connection with its CIPA Section 4 motion do not provide a basis for tolling the Speedy Trial Clock.

at 329.

Therefore, the Court concludes that the Motion for Discovery tolled no time past February 22, 2021.

c. *Motion to Declare Complex*

M. Kuciapinski does not address the effect of the Motion to Declare Complex on the Speedy Trial Clock as directly as she addresses the other relevant motions.[9] (*See* ECF Nos. 578, 598.) However, Table B demonstrates that K. Kuciapinski filed the Motion to Declare Complex on August 20, 2021 (ECF No. 530), and the parties filed their responses on September 3, 2021 (ECF Nos. 542, 544, 545). The Court did not direct reply briefs. (ECF No. 533.) On January 10, 2022, following the CIPA Section 2 scheduling conference, the Court took the Motion to Declare Complex under advisement and said nothing about setting a hearing on the motion. (ECF Nos. 559, 560.) As of the date of this Order, the Court has not ruled on the Motion to Declare Complex.

The Government argues that because the Motion to Declare Complex remains under advisement and no hearing was set, the motion continues to toll the Speedy Trial Clock for K. Kuciapinski and M. Kuciapinski.[10] (ECF No. 591 at 16.)

Despite the Government's argument, the Court disagrees. The Court has had the Motion to Declare Complex under advisement since 30 days after the response briefs were filed on September 3, 2021, or October 3, 2021.[11] Again, the Court accepts

[9] This failure to directly address the Motion to Declare Complex is likely because M. Kuciapinski disputes that it is reasonable that time tolled due to her codefendants' motions should be counted against her.

[10] The Government's response does not mention Stimac. (ECF No. 591 at 16.)

[11] At the very least, the Motion to Declare Complex has been under advisement since

some responsibility with respect to the length of time the Motion to Declare Complex has been pending, which, like the Motion to Sever, it will discuss more later in this Order. However, any undue delay by the Court with respect to the Motion to Sever does not relieve the Government of its obligation to bring a defendant to trial within the time allotted by Congress in the Speedy Trial Act. As with the other motions discussed above, no party filed an EOJ motion, and in its Order taking the Motion to Declare Complex under advisement, the Court made none of the findings required by the Speedy Trial Act which could constitute EOJ findings sufficient to toll the Speedy Trial Clock. 18 U.S.C. § 3161(h)(7)(B).

Therefore, the Court finds that the Motion to Declare Complex tolled no time past October 3, 2021.[12]

d. *Speedy Trial Calculation*

Given the foregoing, the Court determines that none of the motions that the Government suggests have been tolling time according to its calculations have actually been tolling time in this case beyond the dates identified above. And, as noted above, the Government does not dispute M. Kuciapinski's calculations in Table B. (*See* ECF No. 591.) According to these calculations, therefore, at least as of the date M. Kuciapinski's Speedy Trial Motion was filed on February 25, 2022, no less than 236 days had gone untolled with respect to the charges in the original Indictment, and no less than 214 days had gone untolled with respect to the charges in the Superseding

---

January 6, 2022. But because the Court expected no further briefing, the Court finds this date less supportable.

[12] The Court notes that in Table B, M. Kuciapinski does not include any non-excludable time after August 20, 2021, which supports her argument that any figures in that table are conservative. (ECF No. 578-1 at 4; ECF No. 578 at 10.)

Indictment, both of which exceed the 70-day limit set by the Speedy Trial Act.

Therefore, the Court finds that a violation of the Speedy Trial Act has occurred. The Court grants the Speedy Trial Motion to the extent that it dismisses the Superseding Indictment against M. Kuciapinski, as is mandatory under § 3162(a)(2) of the Speedy Trial Act. *United States v. Doran*, 882 F.2d 1511, 1517 (10th Cir.1989) ("Subject to statutory exclusions, "[i]f a defendant is not brought to trial within the seventy-day deadline, dismissal of the indictment is mandatory.").

Having reached this conclusion, the Court must next determine whether dismissal of the Superseding Indictment in these circumstances ought properly to be with or without prejudice.

3. Statutory Factors Regarding Dismissal With or Without Prejudice

The district court retains broad discretion whether to dismiss the indictment with or without prejudice. *Id.* at 1518. "In determining whether to dismiss the case with or without prejudice," the Speedy Trial Act requires the Court to "consider, among others, each of the following factors: the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of this chapter and on the administration of justice." 18 U.S.C. § 3162(a)(2).

"Prejudice to the defendant is among the 'other' factors the text of § 3162 directs the district court to consider." *Abdush-Shakur*, 465 F.3d at 462 (citing *United States v. Taylor*, 487 U.S. 326, 334 (1988)). "[T]he application of the more severe sanction of dismissal with prejudice . . . should be reserved for more egregious violations." *Id.* (citation omitted). "A violation of the speedy trial requirement, by itself, is not a sufficient basis for dismissal with prejudice." *Id.*

Applying those factors, the Court determines that this case lacks the sort of "more egregious violation" to justify a dismissal with prejudice.

        a.    *Seriousness of the Offense*

First, the Court considers the seriousness of the charged offenses.  In *United States v. Koerber*, the Tenth Circuit explained the manner in which a district court should analyze this factor.  813 F.3d 1262, 1275–77 (10th Cir. 2016).  According to the Tenth Circuit, "a district court should consider only whether the charged offenses are serious."  *Id.* at 1276 (citing 18 U.S.C. § 3162(a)(2)).  "One way the district court can measure the seriousness of an offense is by considering the length of sentence Congress has adopted for that offense."  *Id.* (citations omitted).  Additionally, the Tenth Circuit permits a district court to "balance the seriousness-of-the-offense factor with other specific facts, including (1) any resulting prejudice to a defendant from the delay, (2) the seriousness of the STA violation, and (3) the length of the delay."  *Id.* at 1277.

Unhelpfully, neither party addresses this factor in any great detail in the briefs, and neither applies the pertinent case law discussed above.  Other than to state that the Court has broad discretion in deciding whether to dismiss an indictment with or without prejudice, the Government fails to further address the issue.  (ECF No. 591 at 16–17.)  By contrast, M. Kuciapinski addresses the seriousness of the offense factor, but she does not specifically discuss the length of sentence Congress has adopted for the individual offenses charged against her in the Superseding Indictment or the impact those possible sentences have on the seriousness of the offense analysis.  (ECF No. 578 at 10.)  Further, she provides no authority for her conclusory statement that "the offenses against Ms. Kuciapinski are not serious, and she has been dramatically overcharged."  (*Id.*)

The Court determines that the offenses charged in the Superseding Indictment against M. Kuciapinski are serious.  With respect to Count 1, conspiracy to commit procurement fraud, the statute provides:

> If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined under this title or **imprisoned not more than five years**, or both.

18 U.S.C. § 371 (emphasis added).

With respect to Counts 9–15, unlawful obtaining of procurement information, the statute provides:

> (a) Criminal penalties.--A person that violates section 2102 of this title to exchange information covered by section 2102 of this title for anything of value or to obtain or give a person a competitive advantage in the award of a Federal agency procurement contract shall be fined under title 18, **imprisoned for not more than 5 years**, or both.

41 U.S.C. § 2105(a) (emphasis added).

With respect to Count 17, making a false statement, the statute provides:

> [W]hoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully--
>
> > (1) falsifies, conceals, or covers up by any trick, scheme, or device a material fact;
> >
> > (2) makes any materially false, fictitious, or fraudulent statement or representation; or
> >
> > (3) makes or uses any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry;
>
> shall be fined under this title, **imprisoned not more than 5 years** . . . .

18 U.S.C. § 1001(a) (emphasis added).

With respect to Counts 18–31, 33, and 40, fraud by wire, the statute provides:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title **or imprisoned not more than 20 years, or both**.

18 U.S.C. § 1343 (emphasis added).

Finally, with respect to Count 49, major fraud against the United States, the statute provides:

> Whoever knowingly executes, or attempts to execute, any scheme or artifice with the intent--
>
> (1) to defraud the United States; or
>
> (2) to obtain money or property by means of false or fraudulent pretenses, representations, or promises,
>
> . . .
>
> shall, subject to the applicability of subsection (c) of this section, be fined not more than $1,000,000, or **imprisoned not more than 10 years**, or both.

18 U.S.C. § 1031(a) (emphasis added).

For wire fraud alone, M. Kuciapinski faces up to 20 years for *each* of the 16 counts against her, assuming she was found guilty on all of those counts and that the sentencing judge sentenced her consecutively (not concurrently) on those counts. The great length of M. Kuciapinski's potential sentence persuades the Court that it need not balance any other factors suggested in *Koerber* to determine whether the offenses are

serious. The aforementioned penalties contemplated by Congress for the charges in this case convince the Court that M. Kuciapinski's offenses are serious enough that this factor weighs in favor of dismissing the Superseding Indictment without prejudice. *See Koerber*, 813 F.3d at 1275; *see also United States v. Edwards*, 2020 WL 3639799, at *12 (D. Kan. July 6, 2020) (finding that where Congress authorized sentences of up to 10 years and 20 years, the penalties render the offenses serious enough to weigh in favor of dismissing without prejudice).

b. *Facts and Circumstances of the Case that Led to the Dismissal*

"In evaluating the . . . facts and circumstances leading to the dismissal, the court should focus on the culpability of the delay-producing conduct." *Saltzman*, 984 F.2d at 1093 (internal quotation marks omitted). Above, the Court described in great detail the facts and circumstances of this case which led to such significant delays. On the whole, the Court determines that the relevant circumstance here is a combination of the Government's and the Court's own delay.

The Court finds that the vast portion of the culpability for the Speedy Trial Act violation in this case lies with the Government's failure to file *any* EOJ motions in this case. The only EOJ motions were filed very early on in this case, and only by Defendants. Given the procedural and substantive complexity of this case, as well as the myriad events and factors which have caused significant delays in its prosecution, the Court is hard-pressed to understand this hands-off approach by the Government as it relates to the significant speedy trial issues in this case. One possible explanation for this state of affairs is that it appears that the Government has assumed that certain motions—pending for numerous months, if not years, now—have tolled the Speedy Trial Act deadlines.

To be clear, in the Court's view the Government's actions have not been undertaken in bad faith.  But the Government's approach to the significant delays, and their attendant speedy trial issues, which have occurred in this case stands in stark contrast to the precaution the Government routinely takes of filing EOJ motions—whether unopposed or not—in other criminal cases to avoid Speedy Trial Act violations.[13]  *See, e.g.*, *United States v. Flores*, 2021 WL 1521309, at *3 (D. Colo. Apr. 16, 2021) ("[J]ust three days later, the Government filed the United States' Unopposed Motion for Exclusion of Time Under the Speedy Trial Act, which sought to exclude 60 days under the Speedy Trial Act. . . .  Notwithstanding his request for a speedy trial, Flores did not oppose the Government's request."); *United States v. Banks*, 2012 WL 2502754, at *4 (D. Colo. June 28, 2012), *aff'd*, 761 F.3d 1163 (10th Cir. 2014) (joint motion filed by all parties on December 14, 2009, requesting an extension of 361 days); *United States v. Woewiyu*, 2018 WL 2304042, at *2 (E.D. Pa. May 21, 2018) (Government filed a motion to have the case, involving CIPA, declared complex and for a continuance of the trial date; on that same date, the Court granted the Government's motion and ordered an open-ended "ends of justice" continuance pursuant to the Speedy Trial Act).

Moreover, and notwithstanding the Government's conduct, the Court cannot in good conscience ignore its own actions in this case.  Certain motions have been left

---

[13] The Court does not mean to imply that the Government should have sought to file an excessive or unwarranted number of EOJ motions simply to keep the Speedy Trial Clock in check.  In fact, such a strategy could backfire and lead to a finding by this Court or the Tenth Circuit that such motions lack a legitimate, good faith justification.  But in this case, with all of its CIPA-related delays that the Government should have anticipated—as M. Kuciapinski did in her Motion to Sever and subsequent filings—legitimate EOJ motions by the Government would have received due consideration and would likely have been well-taken by the Court.

pending without resolution for over a year, including the Motion to Sever, which is critical to M. Kuciapinski's arguments with respect to her Speedy Trial Motion.  While the Court has acknowledged the Motion to Sever in at least two Orders (ECF No. 348, 362), and has stated that it would continue to reevaluate the motion periodically as matters pertaining to K. Kuciapinski develop and the Court issues additional orders relating to COVID-19 (ECF No. 362 at 3), the Court has not been sufficiently diligent in heeding its own direction.  Similarly, once it became ripe, M. Kuciapinski's Motion for Discovery was not resolved for approximately nine months.  (ECF Nos. 412, 550.) While the Court has various legitimate explanations for such delays—not the least of which is the encumbering effect of the CIPA-related aspects of this case—it cannot excuse the length of time taken to resolve these motions.  As such, the Court accepts some culpability for the delays in this case.

Given that M. Kuciapinski filed her Motion to Sever on November 15, 2019 (ECF No. 260) and explicitly declined to seek discovery of classified information—knowing it would significantly delay the case—the Court concludes that M. Kuciapinski bears little to no culpability for the delays described herein.  While the Government argues that M. Kuciapinski has continued to file various motions which have contributed to delays (ECF No. 591 at 1–8), in the Court's view, the fact that she filed the Motion to Sever in a timely manner largely exonerates her from such arguments.

The Tenth Circuit has stated that "[w]here the delay caused by the government is unintentional and the district court takes it upon itself to share in the blame for the delay, the administration of justice is not served by dismissal with prejudice."  *Abdush-Shakur*, 465 F.3d at 462 (citing *United States v. Kottmyer*, 961 F.2d 569, 573 (6th Cir.1992)

("Since the government's conduct was apparently unintentional and since the blame was shared by the court," the district court was correct in concluding that "dismissal with prejudice would only affect the prosecutor in this case and would not serve the interests of the public.")).

Further, the Tenth Circuit has noted that the government should not be rewarded for serious deficiencies in prosecuting a case, including dilatory and neglectful conduct in managing the Speedy Trial Clock, but that "a dismissal with prejudice is not the only method for a court to show that violations of the STA must be taken seriously." *United States v. Koerber*, 10 F.4th 1083, 1108 (10th Cir. 2021) (citing *United States v. Jones*, 213 F.3d 1253, 1257 (10th Cir. 2000) (internal quotation marks and alterations omitted)).  "In the end, a dismissal without prejudice still requires the government to reindict, potentially causing the indictment to flounder on the statute of limitations."  *Id.* (citation omitted).

With respect to the Court's delay, the Circuit Courts of Appeals are somewhat split on whether a court's delay should be attributable to one side or the other for failing to inform the court of an impending Speedy Trial violation, or (on the defendant's part) failing to move for dismissal soon after the violation can be established.  *See United States v. Richardson*, Criminal Case No. 18-cr-101-WJM, (ECF No. 39) (D. Colo. Dec. 27, 2018).  The Second Circuit holds that the Government "is not required to monitor and notify the court of impending and expired speedy trial deadlines," but failure to do so "is properly taken into consideration when evaluating 'the facts and circumstances of the case which led to the dismissal,' 18 U.S.C. § 3162(a)(2), and may weigh in favor of dismissal *without* prejudice."  *United States v. Bert*, 814 F.3d 70, 84 (2d Cir. 2016)

(emphasis added).  The Tenth Circuit, by contrast, focuses on the "defendant who waits passively while the time runs"—such a defendant "has less claim to dismissal *with* prejudice than does a defendant who demands, but does not receive, prompt attention." *Saltzman*, 984 F.2d at 1094 (emphasis added; internal quotation marks omitted; alterations incorporated).

While there is some merit to M. Kuciapinski's argument that dismissal should be with prejudice, the Court concludes that the facts and circumstances of this case—particularly the unintentional nature of the Government's actions with respect to the delays in this case, combined with the Court's own contributions to those delays—militate in favor of dismissal without prejudice.

c.      *The Impact of a Reprosecution on the Administration of the Speedy Trial Act and on the Administration of Justice*

"When evaluating this factor, a court should consider, inter alia, whether the delay caused by the government was intentional and the prejudice suffered by the defendant from the Act's violation."  *United States v. Toombs*, 713 F.3d 1273, 1281 (10th Cir. 2013).

Again, neither party briefs this issue well, if at all.  Nonetheless, as explained above, the Court cannot conclude that the delay caused by the Government was intentional, nor that M. Kuciapinski suffered any significant prejudice from the Speedy Trial Act's violation.  While the delay in this case has been substantial, the Court finds that no party in this case has intentionally attempted to abuse the Speedy Trial Act.  *Id.*; *see also Abdush-Shakur*, 465 F.3d at 463–64.  Thus, this factor weighs in favor of dismissal without prejudice.

Given the foregoing, the Court finds that the three statutory factors, on balance,

favor dismissal without prejudice.

**C. Sixth Amendment Speedy Trial Right**

1. Length of the Delay

Delay is measured from "when the defendant is arrested or indicted, whichever comes first." *Jackson v. Ray*, 390 F.3d 1254, 1261 (10th Cir. 2004). M. Kuciapinski was indicted on September 13, 2018. (ECF No. 1.) Three years, 10 months, and some days have passed since that time. The delay is therefore presumptively prejudicial, and the Court must go on to examine the remaining three factors. *See Larson*, 627 F.3d at 1208.

2. Reason for the Delay

"The second *Barker* factor—the reason for delay—is the flag all litigants seek to capture." *Margheim*, 770 F.3d at 1326 (quoting *United States v. Loud Hawk*, 474 U.S. 302, 315 (1986)). In evaluating this factor, the Court "must assess the reasons offered by the government for not bringing the defendant to trial in a timely fashion." *Id*. "When neither the prosecution nor the defendant is to blame, the delay can still favor one side or the other." *Muhtorov*, 20 F.4th at 640.

"The reason for a delay weighs against the government in proportion to the degree to which the government caused the delay. . . . [C]ontinuances and other motions filed by the defendant do not weigh against the government." *United States v. Batie*, 433 F.3d 1287, 1291 (10th Cir. 2006); *United States v. Banks*, 761 F.3d 1163, 1183 (10th Cir. 2014) (finding the defendants caused the delay where they filed "multiple continuances with the district court and argued that they would be prejudiced if the court refused to grant them"). "Purposeful delay or delay to gain advantage weighs heavily against the government, while '[a] more neutral reason such as negligence or

overcrowded courts [is] weighted less heavily.'" *United States v. Gould*, 672 F.3d 930, 937 (10th Cir. 2012) (alterations in original) (quoting *Barker*, 407 U.S. at 531).

The Court has explained in detail the reasons for delay in this case, some of which the Government controlled, but many of which it did not. *See Muhtorov*, 20 F.4th at 640. The Court need not reiterate those reasons here. Suffice it to say that the Court has found no purposeful delay from any party; but to the extent that it has found no delay attributable to M. Kuciapinski, given her timely filing of the Motion to Sever (despite the Government's arguments to the contrary (ECF No. 591 at 20)), the Court finds that this factor weighs very slightly in her favor.

3. Assertion of Desire for Speedy Trial

With regard to the third *Barker* factor—a defendant's assertion of her speedy trial right—the Tenth Circuit has recognized the following:

> Perhaps most important is whether the defendant has actively asserted his right to a speedy trial. This is not satisfied merely by moving to dismiss after the delay has already occurred. Such a motion could be, indeed may well be, strategic. The question, instead, is whether the defendant's behavior during the course of litigation evinces a desire to go to trial with dispatch.

*Batie*, 433 F.3d at 1291; *Barker*, 407 U.S. at 536 ("[B]arring extraordinary circumstances, we would be reluctant indeed to rule that a defendant was denied this constitutional right on a record that strongly indicates, as does this one, that the defendant did not want a speedy trial.").

M. Kuciapinski asserted her right to a speedy trial over two years ago when she filed her Motion to Sever on November 15, 2019. (ECF No. 260.) The Government does not dispute as much. (ECF No. 591 at 22.) However, the Government points to the fact that the Court issued two orders that put M. Kuciapinski on notice that separate

trials in this case would be an extraordinary burden on the Court and the Government, and also identified difficulties in conducting trials at all due to the COVID-19 pandemic. (ECF Nos. 348, 362.)  The Government emphasizes that after these Orders, "the next time defendant M. Kuciapinski asserted her right to a speedy trial was in her motion to dismiss the charges for violations to a speedy trial on February 25, 2022."  (ECF No. 591 at 22 (citing ECF No. 578).)  Moreover, the Government underscores that between the filing of the Motion to Sever and the Speedy Trial Motion, M. Kuciapinski filed a motion for discovery, an emergency motion to stay a proceeding, two motions to withdraw as counsel, and a second motion to suppress.  (*Id.*)  Therefore, the Government asserts that any argument that M. Kuciapinski "met her burden to articulate her desire for a speedy trial fails based on her conduct of filing other motions that continue to delay the case," and that if she was "completely focused on a speedy trial, it is doubtful that she would continue to file motions that delayed the proceedings and sever ties to with attorneys."  (*Id.* at 23.)

While the procedural facts the Government describes are accurate, they miss the point.  Had the Court ruled on the Motion to Sever or had the Government filed EOJ motions at any point in the relevant time period, M. Kuciapinski would have known what ground she was on and developed her trial strategy accordingly.  However, with the Motion to Sever pending and CIPA-related discovery proceeding at a glacial pace, M. Kuciapinski had to litigate the case in the manner she and her attorneys saw fit.  To the extent this means she hired various attorneys, that is her right.  And to the extent that means those attorneys filed various motions on her behalf, that is also her right.  The Court cannot conclude that these actions by M. Kuciapinski somehow undermine her

efforts to obtain a speedy trial, as evidenced by the timely filing of the Motion to Sever and her immediate filing of the Speedy Trial Motion following the CIPA Section 2 scheduling conference in January 2022.  Therefore, the Court finds that this factor weighs in M. Kuciapinski's favor.

4.    Prejudice

M. Kuciapinski bears the burden of showing that she was prejudiced by the delay of her trial.  *Larson*, 627 F.3d at 1208–09.  Failure to show prejudice caused by the delay is "nearly fatal to a speedy trial claim."  *Gould*, 672 F.3d at 939. In particular, the Court must "assess prejudice in light of the interests that the speedy trial right was designed to protect," namely, "(i) the prevention of oppressive pretrial incarceration; (ii) the minimization of anxiety and concern of the accused; and (iii) minimization of the possibility that the defense will be impaired."  *Seltzer*, 595 F.3d 1170, 1179 (10th Cir. 2010).  The third factor is "the most serious," followed by the first and then the second. *Id.* at 1179–80.

To support her arguments that the delay has caused her prejudice, M. Kuciapinski states that she has been subjected to home detention in this matter for two and a half years.[14]  (ECF No. 578 at 13 (citing ECF Nos. 43, 474).)  Further, she states she has lost job opportunities in her field, and her life savings have been depleted because the Government opposes reasonable modifications of her conditions of release.  (*Id.* at 13–14 (citing ECF Nos. 279, 288, 299).)  She claims she has been unable to leave Colorado for the last three and a half years to tend to her elderly parents.  (*Id.* at 14.)  In sum, M. Kuciapinski argues that these conditions "are

---

[14] On March 31, 2021, the Court removed home detention but left GPS monitoring in place.  (ECF No. 474.)

oppressive and a restriction on [her] liberty."  (*Id.*)

Regarding the second factor of anxiety, M. Kuciapinski states that she has

suffered extreme and atypical anxiety "while this action has tarried."  (*Id.*)  Specifically,

she states that the Government seized the home in which she had lived for years and

forced her to vacate in the middle of the COVID-19 pandemic.  (*Id.*)  She identifies

instances in which the Government's treatment of her has been "excessive and

unmeasured," such as the Government taking opportunities to "smear [her] character

and make sexist and off-color accusations that have nothing to do with this case."  (*Id.*)

M. Kuciapinski claims that she has been isolated from her friends and family, her

movement and travel have been restricted, she has been blocked from having contact

with her former housemate and father figure in Colorado, and she has had difficulty

gaining employment in her chosen field—particularly while wearing a GPS monitor.  (*Id.*

at 15.)  As such, M. Kuciapinski contends that the Government's "overzealous pre-trial

coercion" of her, coupled with its "negligence in prosecution during that time have

resulted in a violation of [her] speedy trial rights and her being isolated, bankrupt, and

forced from her home."  (*Id.*)

Regarding the third factor, M. Kuciapinski states that "[w]ithout funds, permanent

housing, and support, [her] ability to defend herself has been and will continue to be

impaired."  (*Id.*)  She states no more concerning this third, "most serious" factor.

In response, the Government argues that M. Kuciapinski fails to meet her burden

to show she was prejudiced by the delay in this case.  The Government contends that

M. Kuciapinski's home detention and GPS monitoring permitted her to seek

employment, education, attend religious services, medical, substance abuse, or mental

health treatment, attorney visits, court appearances, court-ordered obligations, or other activities approved by pretrial services.  (ECF No. 591 at 24–25.)  Further, the Government states that nothing has prevented M. Kuciapinski from seeking employment in Colorado or remotely from Colorado, and that she could have and still can seek approval to travel outside the state for legitimate purposes.  (*Id.* at 25.)

Next, the Government argues that M. Kuciapinski has failed to demonstrate how her anxiety is a particularly special harm she suffers which distinguishes her from any other defendant awaiting trial.  (*Id.* (citing *United States v. Dirden*, 38 F.3d 1131, 1138 (10th Cir. 1994); and *United States v. Santiago-Becerril*, 130 F.3d 11, 23 (1st Cir. 1997)).)

Finally, the Government asserts that M. Kuciapinski has not demonstrated that her defense is impaired by the delay because impairment would only become prejudicial when she loses witnesses or evidence.  (*Id.* at 26 (citing *Muhtorov*, 20 F.4th at 654 (impairment of the defense can be the result of lost witnesses or lost evidence)).)

The Court finds that M. Kuciapinski has not suffered the type of prejudice necessary to violate her constitutional rights.  "In most circumstances, failure to specify prejudice will eviscerate the defendant's claim." *Muhtorov*, 20 F.4th at 653–54 (citations and alterations omitted).  First, M. Kuciapinski has not identified "oppressive pretrial incarceration," which is the second most important prejudice factor.  *Id.* at 654.  She has been subjected only to home detention and GPS ankle monitoring, and as the Government points out, has been able to engage in various and significant activities outside of her home.  Additionally, she points to no case law demonstrating that such confinement is prejudicial.

Second, M. Kuciapinski's argument that she suffers from "extreme and atypical anxiety" is not well supported.  Even in one case in which a defendant was prescribed medication for anxiety and depression for the first time in his life and advised a case worker he was not coping well, the Tenth Circuit has not found "special harm."  *Id.* at 657.  M. Kuciapinski has not alleged that she has taken any medication or sought any treatment for her anxiety, and even if she had, it might not be sufficient to demonstrate prejudice.  Without more, the Court cannot conclude that M. Kuciapinski has established any special anxiety or harm distinguishing this case from others.

Finally, M. Kuciapinski has utterly failed to satisfy the "last and most important type of specific prejudice": impairment of the defense.  *Id.* (internal quotation marks omitted).  She identifies no lost witnesses or evidence.  The Court finds she has not carried her burden to establish impairment of the defense.

Considering all of the types of specific prejudice and the facts set forth by M. Kuciapinski, the Court concludes that she has suffered no substantial prejudice.

5.    Balancing

"Speedy trial claims require applying a balancing test."  *Seltzer*, 595 F.3d at 1181 (quoting *Jackson*, 390 F.3d at 1266).  "[T]he right to a prompt inquiry into criminal charges is fundamental and the duty of the charging authority is to provide a prompt trial."  *Id.* (quoting *Dickey v. Florida*, 398 U.S. 30, 38 (1970)).  None of these four factors is "a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial."  *Id.* (quoting *Batie*, 433 F.3d at 1290).

Considering the four *Barker* factors and the circumstances surrounding this case, the Court finds that M. Kuciapinski's right to a speedy trial under the Sixth Amendment has not been violated.  Therefore, the Court denies the Speedy Trial Motion to the

extent it is based on a Sixth Amendment speedy trial violation.

**IV. CONCLUSION**

For the reasons explained above, the Court ORDERS:

1. Defendant Mykhael Kuciapinski's Motion to Dismiss for Violation of Speedy Trial Rights (ECF No. 578) is GRANTED IN PART and DENIED IN PART as explained above;

2. All counts against Defendant Mykhael Kuciapinski in the Superseding Indictment (ECF No. 204) are DISMISSED WITHOUT PREJUDICE;

3. Defendant Mykhael Kuciapinski's Motion to Sever (ECF No. 260) is DENIED AS MOOT;

4. Defendant Mykhael Kuciapinski's Second Motion to Suppress Evidence (ECF No. 564) is DENIED AS MOOT;

5. The Government is DIRECTED to forthwith coordinate with defense counsel, the U.S. Marshal's Service, and the Pretrial Services Unit of the U.S. Probation Office in order to facilitate full compliance with this Order as to Defendant Mykhael Kuciapinski;

6. The Clerk shall terminate Defendant Mykhael Kuciapinski as a Defendant in this case on the docket; and

7. The case remains pending as to Defendants Kevin Kuciapinski and Randolph Stimac.

Dated this 3rd day of August, 2022.

BY THE COURT:

William J. Martinez
United States District Judge